UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC. and ISAAC LARIAN,<br><br>    Plaintiff(s),<br><br>    v.<br><br>HARTFORD INSURANCE COMPANY OF THE MIDWEST, HARTFORD FIRE INSURANCE COMPANY, THE HARTFORD FINANCIAL SERVICES GROUP, and DOES 1 through 100, inclusive,<br><br>    Defendant(s). | CASE NO. EDCV 08-0457 DOC (RNBx)<br><br>consolidated with CV 08-0458 DOC (JCRx), CV 08-0459 DOC (JCRx), and CV 09-00025 DOC (OPx)<br><br>[TENTATIVE] O R D E R GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

Before the Court are cross-motions for partial summary judgment filed by Plaintiffs MGA Entertainment, Inc. ("MGA") and Isaac Larian ("Larian") (collectively "Plaintiffs" or the "MGA Parties") and Defendants Evanston Insurance Company ("Evanston"), Markel Corporation, and Markel Underwriting Managers, Inc. (collectively "Defendants"). After considering the moving, opposing, and replying papers, [as well as the parties' oral argument,] the Court [GRANTS IN PART AND DENIES IN PART] Plaintiffs' Motion for Partial Summary Judgment ("Pls.' MSJ") and [DENIES] Defendants' Motion for Partial Summary Judgment ("Defs.' MSJ").

**I.     Background**

The instant motions concern Defendants' duty to defend the MGA Parties in the consolidated litigation captioned *Mattel, Inc. v. MGA Entertainment, Inc., et al.*, CV 04-9049 DOC (RNBx) (the "Mattel litigation"). Prior to the transfer of this case from the docket of the Honorable Stephen G. Larson to the docket of this Court, the Court issued a June 24, 2009 order granting partial summary judgment as to Evanston's duty to defend the MGA Parties for the Mattel litigation. The Court held that Evanston's duty to defend was triggered by the following allegations set forth in Mattel's Second Amended Answer and Counterclaims ("SAAC") in the Mattel litigation:

### VIII. LARIAN MAKES MISREPRESENTATIONS TO RETAILERS ABOUT MATTEL'S PRODUCTS

78. Counter-defendants have engaged in other illegal practices in their efforts to compete unfairly with Mattel. Larian had a practice of sending e-mail messages to a "Bratz News" distribution list that Larian created or that was created for him. Mattel is informed and believes that the recipients of e-mail messages sent to the "Bratz News" distribution list includes members of the media as well as representatives of many of Mattel's most significant customers.

79. On May 12, 2006, Larian sent an e-mail message to the "Bratz News" distribution list that included a reference to Mattel's updated MY SCENE MY BLING BLING product with real gems. Mattel had not publicly announced this product at the time that Larian sent his May 12, 2006 e-mail. In fact, Mattel had guarded the identification of this particular product.

80. Shortly thereafter, Larian engaged in a campaign of calling Mattel's most significant customers, including but not limited to Target and TRU, regarding MY SCENE

2

|   |   |   |
|---|---|---|
| 1 |  | MY BLING BLING product with real gems.  Larian |
| 2 |  | knowingly made false statements about that product to |
| 3 |  | each retailer.  As of the writing of this Second Amended |
| 4 |  | Answer and Counterclaims, Mattel is aware that Larian |
| 5 |  | represented to each retailer that each was the only retailer |
| 6 |  | to purchase the product and that Mattel would not be |
| 7 |  | supporting the product with television advertising.  At the |
| 8 |  | time that Larian made these statements, he knew them to |
| 9 |  | be false.  As a result of Larian's misrepresentations, at |
| 10 |  | least one retailer cancelled an order for 75,000 units of the |
| 11 |  | MY SCENE MY BLING BLING product with real gems. |
| 12 |  | Only after Mattel learned of Larian's misrepresentations |
| 13 |  | and was able to correct them was Mattel able to assure the |
| 14 |  | retailer that Larian's representations were false and |
| 15 |  | persuade the retailer to reinstate the order. |
| 16 | 81. | Such conduct is not an isolated incident.  MGA and |
| 17 |  | Larian, in an effort to gain an unfair competitive |
| 18 |  | advantage repeatedly issued false and misleading press |
| 19 |  | releases.  In these press releases, MGA and Larian have |
| 20 |  | misrepresented Bratz's sales, Bratz's market share, Bratz's |
| 21 |  | position vis-à-vis Mattel's BARBIE products, sales of |
| 22 |  | Mattel's BARBIE products, and the market share of |
| 23 |  | Mattel's BARBIE products. |
| 24 |  | . . . . |
| 25 | 165. | By engaging in the foregoing conduct, Counter-defendants |
| 26 |  | have, individually and in combination, engaged in |
| 27 |  | unlawful, unfair and/or fraudulent acts of unfair |
| 28 |  | competition. . . . Such conduct . . . included, without |

|   |   |
|---|---|
| 1 | limitation, MGA's and Larian's disparagement of Mattel's |
| 2 | products and misrepresentations as alleged above. |

SAAC ¶¶ 78-81, 165.

Evanston issued Commercial General Liability Policies to the MGA Parties for policy years 2001 and 2002. *See* Declaration of Michelle Daringer in Opp'n to Defs.' MSJ ("Darringer Decl.") ¶¶ 5-6. Both policies covered damages caused by "personal and advertising injury" and provided that "We [Evanston] will have the right and duty to defend the insured against any 'suit' seeking those damages." *Id.* ¶ 7; Ex. 1 to Derringer Decl. at 33; Ex. 2 to Derringer Decl. at 25. While the only date-specific allegations in paragraphs 78 through 81 and 165 of the SAAC concerned conduct occurring after 2006, the Court's June 24, 2009 order held that "[t]he remaining paragraphs . . . are utterly without any temporal context" and, therefore, "the potential for coverage" under both Evanston policies was implicated. (*See* Dkt. 111 at 7.)

Subsequent to the June 24, 2009 order, Evanston agreed to participate in the defense of the Mattel litigation by letter to the MGA Parties dated July 20, 2009, subject to a reservation of rights. *See* Exhibit A to Declaration of Shari R. Marko in Support of Defs.' MSJ. As a result of certain pending disputes between the parties, which form the basis of the instant motions, Evanston has yet to pay the MGA Parties for defense costs incurred in defense of the Mattel litigation. *See* Darringer Decl. ¶ 15.

Evanston did not insure the MGA Parties before 2001 or after 2002. Defendant Hartford Casualty Insurance Company ("Hartford") was the primary insurer to the MGA Parties for policy years 1999 and 2000. The Court entered a settlement between the MGA Parties and Hartford on July 27, 2009. Defendant Crum & Forster Specialty Insurance Company ("Crum & Forster") was primary insurer to the MGA Parties for policy years 2003, 2004, and 2005. Lexington Insurance Company ("AIG") was primary insurer to the MGA Paarties for policy years 2006 and 2007.

In January 2007, Mattel filed its First Amended Answer and Counterclaims (FAAC) in the Mattel litigation and on January 5, 2007, the MGA Parties tendered their defense to Crum & Forster. On July 12, 2007, Mattel filed and served its SAAC, which included the above allegations concerning trade libel. Between October 22, 2007 and November 1, 2007, the MGA Parties

1  delivered letters tendering their defense of the Mattel litigation to their remaining insurers, Hartford,
2  Evanston, and AIG.  Hartford, Evanston, and Crum & Forster declined to tender a defense on the
3  grounds that the trade libel alleged in the SAAC did not occur between 1999 and 2006 and
4  therefore, was outside the relevant policy periods.  In a November 27, 2007 response letter, AIG
5  declined to tender a defense but agreed to monitor the claim subject to a reservation of rights.  *See*
6  Derringer Decl. ¶ 11; Ex. 6 to Derringer Decl.  On May 15, 2008, AIG began defending the MGA
7  Parties subject to a reservation of rights.  In December 2008, the MGA Parties reached a settlement
8  with AIG for previously incurred defense costs under which AIG agreed to pay a total of
9  $33,619,486.98 for: "(1) past defense costs incurred by plaintiffs up to and including September 30,
10 2008; and (2) a release of plaintiffs' tort claims for breach of the implied covenant of good faith and
11 fair dealing, consequential economic damages, and punitive damages up to the date of the
12 settlement."  *See id.* ¶ 14.  AIG has filed a separate action for contribution against Evanston that is
13 pending before this Court.  *See Lexington Ins. Co., et al. v. Evanston Ins. Co., et al.*, No. 2:09-cv-
14 07461-DOC-RNB.

   **II.    Legal Standard**

16     Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file,
17 and any affidavits show that there is no genuine issue as to any material fact and that the movant is
18 entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Ninth Circuit has recently held
19 that "Rule 56 . . . does not bar successive motions" for summary judgment, where new facts
20 discovered by the parties warrant a review of the Court's earlier order.  *See Hoffman v.*
21 *Tonnemacher*, No. 08-16166, 2010 WL 184339, at *2 (9th Cir. Jan. 21, 2010) (holding that "district
22 courts have discretion to entertain successive motions for summary judgment").
23     The Court must view the facts and draw inferences in the manner most favorable to the non-
24 moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993 (1962); *Chevron*
25 *Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992).  The moving party bears the initial
26 burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not
27 disprove the other party's case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505
28 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548 (1986).  When the non-

moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e); *see also Anderson,* 477 U.S. at 248-49. Furthermore, a party cannot create a genuine issue of material fact simply by making assertions in its legal papers. There must be specific, admissible evidence identifying the basis for the dispute. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1980). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson*, 477 U.S. at 252.

### III. Discussion

Both Plaintiffs and Defendants argue that the Court's June 24, 2009 order was unclear with respect to Evanston's obligations, in light of the fact that AIG has already tendered a defense to the MGA Parties and partially reimbursed the MGA Parties for defense costs incurred in connection with the Mattel litigation prior to December 2008. Defendants argue that the MGA Parties are not entitled to double-recovery of defense costs and that Evanston is only obligated to pay an equitable share of the costs already incurred by AIG, which are the subject of the parallel litigation between Lexington and Evanston/Crum & Forster. In response, the MGA Parties argue that they have incurred "overage" charges as a result of paying hourly rates in excess of the limit imposed by California Civil Code § 2860(c). The MGA Parties also argue that Evanston's retroactive reservation of rights is invalid in light of Evanston's previously refusal to defend the MGA Parties in the Mattel litigation.

### A.   The Duty to Defend; Reservation of Rights; and Section 2860

An insurer's duty to defend extends to both covered and uncovered claims tendered by the

insured, unless none of the claims falls within the policy coverage. *See Buss v. Superior Court*, 16 Cal. 4th 35, 59 n. 23 (1997); *see also California v. Pacific Indem. Co.*, 63 Cal. App. 4th 1535, 1537-38 (1998) ("In a 'mixed' action, in which some of the claims are at least potentially covered or in which parts of a claim are potentially covered, and others are not, the insurer has a duty to defend the entire action."). Providing an insured with a partial defense is tantamount to offering no defense at all: "[t]o defend meaningfully, [an insurer] must defend immediately. To defend immediately, [an insurer] must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not." *Buss*, 16 Cal. 4th at 58-59. The duty to defend is only terminated when "the insurer proves, by facts subsequently developed, that the potential for coverage which previously appeared cannot possibly materialize, or no longer exists." *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal. 4th 643, 657 (2005).

An insurer may nonetheless reserve its rights to later seek reimbursement of defense costs that are not, in part or in whole, covered by the policy. *See Buss*, 16 Cal. 4th at 50-52. Failure to issue a reservation of rights constitutes a waiver. *See id.* at 61 n. 27 ("To the extent that this right is implied in law as quasi-contractual, it must indeed be reserved. . . . To the extent that this right is implied in fact in the policy as contractual it *should* be reserved. Through reservation, the insurer avoids waiver.") (emphasis in original); *see also.Scottsdale*, 36 Cal. 4th at 656 (noting that a reservation of rights "permits the insured to decide whether to accept the insurer's terms for providing a defense, or instead to assume and control its own defense"). Notwithstanding this rule, "an insurer does not waive or relinquish any coverage defenses it fails to assert at the time of its acceptance of a tender of defense, even when it does not make any express and full reservation of rights for a substantial period of time after the defense has been accepted." *Ringler Assoc. Inc. v. Md. Cas. Co.*, 80 Cal. App. 4th 1165, 1189 (2000); *but see id.* at 1190 (recognizing exception based on principles of equitable estoppel).

When an insurer reserves its right to later seek reimbursement, it triggers the insured's right to select its counsel in lieu of the insurer's counsel. In *San Diego Federal Credit Union v. Cumus Ins. Society, Inc.*, 162 Cal. App. 3d 358 (1984) (*Cumis*), the California court recognized that where some portion of an insured's claim may not fall within the insurer's policy coverage, "[o]pposing

7

poles of interest are represented" by the insurer's interest in presenting a defense tailored to dance around the policy limitations and the insurer's simultaneous interest in obtaining a favorable outcome for the insured. *See id.* at 364. In such circumstances, counsel selected by the insurer "has a dual agency status." *Id.*

Therefore, where an insurer consents to defend its insured but reserves its right to later disclaim coverage, the insured may have a right to decline representation by counsel selected by the insurer. *Id.* at 375 ("If the insured does not give an informed consent to continued representation, counsel must cease to represent both."). In such a scenario, "the insurer must pay the **reasonable cost** for hiring independent counsel by the insured." *Id.* (emphasis added).

California Civil Code § 2860(c) codified and superceded *Cumis* and in relevant part provides that:

> The insurer's obligation to pay fees to the independent counsel selected by the insured is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended. This subdivision does not invalidate other different or additional policy provisions pertaining to attorney's fees or providing for methods of settlement of disputes concerning those fees. Any dispute concerning attorney's fees not resolved by these methods shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute.

Where multiple insurers are on the risk for a single claim, section 2860(c) applies one rate "collectively with respect to all insurers" as opposed to imposing a separate rate for each insurer. *See San Gabriel Valley Water Co. v. Hartford Acc. & Indem. Co.*, 82 Cal. App. 4th 1230, 1239-42 (2000). If an insurer declines to provide a defense, it may not later invoke section 2860's rate limitation. *See Atmel Corp. v. St. Paul Fire & Marine*, 426 F. Supp. 2d 1039, 1047-48 (N.D. Cal. Oct. 11, 2005) (citing *Concept Enter., Inc. v. Hartford Ins. Co. Of the Midwest*, 2001 WL 34050685, at *3 (C.D. Cal. May 22, 2001)); *see also California v. Pacific Indemn. Co.*, 63 Cal. App. 4th 1535,

8

1544 (1998) (reasoning that once the insurer "materially breache[s] its duty to defend . . . [it] forfeit[s] its right to participate in or control the . . . defense, whether based on Civil Code section 2860 or otherwise. . . . ."). The parties do not dispute that Evanston failed to defend the MGA Parties in the Mattel litigation and that Evanston may not avail itself of section 2860's protections as a result. (*See* Pls.' MSJ at 4:9-7:14.) Accordingly, Plaintiffs' MSJ is [GRANTED] insofar as it seeks a judicial declaration that an insurer that rejects coverage may not later invoke section 2860(c) to retroactively limit the amount it owes for already incurred costs of defense covered by the policy.

The remaining (contested) issues before this Court are: (1) whether there is no genuine issue of material fact as to whether Evanston should pay for defense costs incurred by the MGA Parties before they tendered their defense on October 22, 2007; (2) whether there is no genuine issue of material fact as to whether Evanston must pay for "overage" defense costs not paid by AIG incurred by the MGA Parties after the October 22, 2007 tender – *i.e.*, costs in excess of section 2860(c)'s rate limitation and/or costs in excess of AIG's settlement with the MGA Parties; and (3) whether Evanston is entitled to retroactively reserve its rights to seek reimbursement for defense costs not covered under its policy with the MGA Parties.

### B. Defense Costs Incurred Prior to October 22, 2007 Tender

"An insurer generally has no duty to defend an insured until the insured tenders his defense." *Am. Nat. Red Cross v. St. Paul Travelers, Inc.*, 293 Fed. Appx. 512, 513 (9th Cir. 2008) (citing *Tradewinds Escrow, Inc. v. Truck Ins. Exch.*, 97 Cal. App. 4th 704, 710 (2002)). There are a number of recognized exceptions to this rule. First, a duty to defend exists "where the insured was unaware of the existence or contents of the policy and was therefore unable to tender." *Id.* (citing *Shell Oil Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 44 Cal. App. 4th 1633, 1649 (1996)). Second, a duty to defend may exist when the "insured is faced with a situation requiring immediate response to protect its legal interests." *Jameston Builders, Inc. v. Gen. Star Indem. Co.*, 77 Cal. App. 4th 341, 347 (1999).

Evanston's policies contain a "no voluntary payments" provision which provides that "[n]o insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [Evanston's] consent." (SUF 22.) Thus, the policy

9

expressly excludes Evanston's duty to pay for pre-tender costs, *see Western Int'l Syndication Corp. v. Gulf Ins. Co.*, CV 04-2349-RGK (JWJx), 2004 U.S. Dist. LEXIS 17867, at *26 (C.D. Cal. Sept. 1, 2004), and the MGA Parties can only survive summary judgment by demonstrating a genuine issue of material fact as to one of the two recognized exceptions. *See Faust v. Travelers*, 55 F.3d 471, 472 (9th Cir. 1995) ("California courts have consistently honored voluntary payment provisions such as the one in the subject policy in this case.").

Genuine issues of material fact preclude summary judgment as to the recovery of pre-tender defense costs incurred by the MGA Parties. Admittedly, the MGA Parties offer no evidence that either exception applies, but the moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Anderson,* 477 U.S. at 248-49. Evanston protests this burden, arguing that it would be placed in the position of having to "prove a negative." Reply in Support of Defs.' MSJ at 6:11. Not so. Proving that neither exception applies may require the Evanston to prove a negative, but there are a number of affirmative facts that Evanston could provide to prove the absence of a genuine issue of material fact as to whether: (1) the MGA Parties were aware of the Evanston policy *and its contents* prior to October 22, 2007; and (2) the MGA Parties did not face any unique urgency to stage a defense such that they were precluded from tendering their defense when the SAAC was filed and served in the Mattel litigation. Evanston has had ample time to seek deposition testimony, propound interrogatories, and issue requests for admission as to this fact. And they are free to seek the Court's leave to obtain further discovery with respect to this limited issue. Evanston does not need to clear a high bar on this issue, but it needs to offer some facts to the Court. *See Concept Enter., Inc. v. Hartford Ins. Co. of the Midwest*, 2001 WL 34050685, * 5 (C.D. Cal. May 22, 2001) (considering declarations sufficient to find that insured was not entitled to recovery of pre-tender costs).[1]

---

[1] The MGA Parties' miscite *Jamestown Builders* for the proposition that an insurer that declines to defend may not later avoid the payment of pre-tender costs. As the court in *Concept Enterprises* noted, *Jamestown Builders* "recognizes the standard entitlement to expenses incurred *after* refusal." 2001 WL 34050685, at *5 n. 2 (emphasis in original).

Accordingly, summary judgment is [DENIED] as to whether Evanston has a duty to pay for pre-tender costs incurred by the MGA Parties in their defense of the Mattel litigation.

### C. Liability for "Overage" Costs

As previously mentioned, an insurer that declines to defend may not later benefit from section 2860(c)'s rate limitation. *See Atmel*, 426 F. Supp. 2d at 1047-48. In addition, as *Burr* provides, an insurer that undertakes to defend a claim must pay for *both* covered claims and non-covered claims, in order to provide a complete and effective defense. *See Upper Deck Co. V. Fed. Ins. Co.*, 358 F.3d 608, 612 (9th Cir. 2003) (holding that "an insurer with a duty to defend must defend the action in its entirety") (quoting *Horace Mann Ins. Co.*, 4 Cal. 4th 1076, 1080 (1993)). Nonetheless, in cases such as this one where numerous insurers are "on the risk" for a portion of the claim, the insured is not entitled to duplicative recovery from multiple insurers for the same costs. *See Ringler*, 80 Cal. App. 4th at 1187 ("[Plaintiff] was fully protected from having to pay *any* costs of its own defense by other insurers who were on the risk"). This is because the insured may in total collect only "that amount which will compensate the insured for the harm or loss caused by the breach of the duty to defend, i.e., the cost incurred in defense of the suit." *Id.* (quoting *Amato v. Mercury Cas. Co.*, 53 Cal. App. 4th 825, 834 (1997)).

Only after May 15, 2008 did AIG agree, subject to a reservation of rights, to defend the MGA Parties in the Mattel litigation. AIG nonetheless reached a settlement with the MGA Parties to reimburse some amount of the defense costs already incurred by the MGA Parties prior to May 15, 2008. The MGA Parties claim that AIG paid for only a fraction of the tens of millions of dollars spent on attorneys' fees prior to May 15, 2008. Among these excess charges are presumably: (1) "overage" charges paid to counsel in the Mattel litigation who charged billing rates in excess of section 2860(c)'s limits; and (2) defense costs incurred by the MGA Parties prior to tendering their defense to their insurers. Neither party has provided conclusive evidence documenting these charges. Thus, the only issue is whether AIG's payment for already incurred defense costs constituted a "complete recovery" as a matter of law.

Evanston argues that "[u]pon accepting [the MGA Parties'] tender of the SAAC, [AIG] had a duty to provide [the MGA Parties] with a complete defense of the Mattel litigation." *See* Reply in

11

Support of Defs.' MSJ at 3:20-22 (citing *Haskel, Inc. v. Superior Court*, 33 Cal. App. 4th 963, 976 n. 9 (1995)). In response, the MGA Parties argue that Evanston's duty to defend exists until the MGA Parties "have been made whole for the damages caused by Evanston's breach." *See* Opp'n to Defs.' MSJ at 13:7-8.

The Court is aware of no precedent which provides direct instruction on this issue. The problem is that AIG's acceptance of the defense burden may not have complied with the general rule that an "insurer is obligated to defend against all of the claims involved in the action." *Horace Mann Ins.*, 4 Cal. 4th at 1081. Not only did AIG not reimburse all costs incurred by the MGA Parties prior to May 15, 2008, but AIG may not have paid for the MGA Parties' entire defense after May 15, 2008 either. Construing the facts in favor of the MGA Parties, the Court must credit the MGA Parties claim to have incurred $82,990,257.22 in post-tender attorneys' fees and costs for the Mattel litigation as of July 17, 2009. *See* Darringer Decl. ¶ 19. Of that $82,990,257.22, the MGA Parties claim to have reached settlements with Hartford, Crum & Forster, and AIG for $51,819,486.98, with AIG paying for the MGA Parties' continuing defense costs in the Mattel litigation. *See id.* ¶ 20. In addition, the MGA Parties claim to have incurred $20,904.821.44 in pre-tender fees and costs. *See id.* ¶ 19.

Since neither the MGA Parties nor Evanston contend that AIG's acceptance of defense costs encompasses pre-tender costs, section III C, *supra*, disposes of that issue for the present time. The Court is left with the post-tender costs that the MGA Parties claim amount to "over $30 million in remaining unreimbursed . . . fees and costs . . . while Evanston was in breach of its duty to defend." *See* Opp'n at 6:27.

As an initial matter, the Court affords little weight to AIG's November 27, 2007 letter agreeing to "monitor" the Mattel litigation and reserving rights, while nonetheless not accepting to undertake the MGA Parties' defense. Both parties rely upon a May 25, 2009 letter from the MGA Parties to Evanston, in which the MGA Parties acknowledge that AIG accepted the defense of the Mattel litigation. The precise language in that letter is as follows: "[AIG] began defending MGA and Larian under a reservation of rights letter dated May 15, 2008." *See* Exhibit A to Declaration of Deborah A. Mason in Support of Opp'n to Pls.' MSJ at 2. This fleeting description of AIG's letter,

12

which has not been submitted for the Court's consideration, evidences no agreement between the MGA Parties and AIG that AIG undertook to pay for costs incurred *before* May 15, 2008. *See id.* Indeed, construing the facts in the MGA Parties' favor, the Court concludes that AIG entered into a settlement for defense costs incurred by the MGA Parties before May 15, 2008. *See* Derringer Decl. ¶ 12. As a condition of that settlement, the MGA Parties agreed to release claims against AIG arising out of the non-payment of any legal fees incurred between October 22, 2007 (date of tender) and May 15, 2008 (date of acceptance of defense). *Id.* ¶¶ 14, 16, 20 (noting that partial settlements released "tort claims against each of the settling carriers"). The Court is unclear as to whether Evanston has sought to discover these settlement agreements, whether they were withheld on privilege grounds and whether Evanston has sought to compel their production. Evanston has not filed a motion to compel with this Court.

        Monitoring a defense is not tantamount to undertaking to defend. *See LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 156 Cal. App. 4th 1259, 1272 (2007) (discussing insurers' obligations). Even it if were, a genuine issue of material fact exists as to whether AIG provided the MGA Parties with a complete defense. While an insurer need not immediately undertake a defense after tender, *see PR Drilling Co., Inc.*, 131 F.3d 147, 148 (9th Cir. 1997), an insurer that "refus[es] to pay for the defense of the entire mixed action . . . fail[s] to provide a complete and meaningful defense." *See Concept Enterprises*, 2001 WL 34050685, at *4 n. 1. Indeed, from an equitable perspective, the November 7, 2007 letter in which AIG agreed only to "monitor" the litigation, did not allow the MGA Parties to "decide whether to accept the insurer's terms for providing a defense, or instead to assume and control its own defense." *See also Scottsdale*, 36 Cal. 4th at 656. To the extent that any overage costs were incurred, the MGA Parties should not be penalized for selecting their own counsel after AIG "gave up the right to control the litigation." *See Concept Enterprises*, 2001 WL 34050685, at * 1. Without having reviewed the terms of the settlement agreement entered into between the MGA Parties and AIG and, *more importantly*, the May 15, 2008 letter in which AIG purportedly agreed to defend the MGA Parties, the Court finds that genuine issues of material fact preclude summary judgment as to whether Evanston is liable for "overage" charges incurred between October 22, 2007 (the date of tender) and May 15, 2008 (the date AIG undertook to

13

defend). *See Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1042-43 (2002) (finding that insured that settled with one insurer for unallocated portion of defense and settlement costs incurred can only "recover . . . the balance of the unreimbursed indemenification expense that it incurred"). The Court likewise finds that genuine issues of material fact preclude summary judgment as to whether AIG agreed to defend the MGA Parties in the Mattel litigation for the time period between October 22, 2007 and May 15, 2008. The parties are encouraged to submit the May 15, 2008 letter and the relevant settlement agreements to the Court for its *in camera* review prior to submitting renewed motions for summary judgment.

The Court likewise considers "overage" charges incurred by the MGA Parties after May 15, 2008 independently recoverable. "Each insurer has an independent duty to provide a defense to the insured." *Armstrong World Indus., Inc. v. Aetna Ca. & Surety Co.*, 26 Cal. Rptr. 2d 35, 59 n. 19, 35 Cal. App. 1 Dist. 1993 (1993) (citing *Continental Cas. Co. v. Zurich Ins. Co.*, 57 Cal.2d 27, 37 (1961); and *Hartford Acc. & Indem. Co. v. Pacific Indem. Co.*, 249 Cal. App. 2d 432, 436 (1967)). The Court recognizes the competing principles that "when more than one policy applies, the defense costs must be apportioned among the insurers," *id.*, and that an insured is entitled to only one defense of a claim and may not obtain multiple recoveries from overlapping primary insurers. *See Ringler*, 80 Cal. App. 4th at 1187; *Tradewinds*, 97 Cal. App. 4th at 712; *Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Co.*, 130 Cal. App. 4th 1078, 1090 (2005). However, in *Ringler*, *Tradewinds*, and *Emerald Bay*, the insured received a complete defense from the primary insurer and this case presents a unique scenario in which the MGA Parties *chose* to hire independent counsel whose rates exceeded section 2860(c)'s limitation.

The purpose of section 2860 "is to provide insurers restricted and relatively consistent and predictable fee rates payable to insured-selected independent counsel." *San Gabriel*, 82 Cal. App. 4th at 1240. In *San Gabriel*, the court considered the imposition of several different rate limitations imprudent where multiple insurers' policies potentially covered the same claim. Rather, balancing the competing principles that each insurer has an independent duty to defend and that an insured is only entitled to one defense of its claim, the court concluded that section 2860(c) requires "a single rate limitation, for a single counsel and defense, albeit multiple insurers may be required to

1  contribute to its payment." *Id.* at 1241.

2  Though the same two principles are in conflict here, the equities appear to run the other way in this case. First, permitting an insurer that declines a defense to later invoke section 2860(c) to disclaim payment of charges in excess of amounts already recovered by the primary insurer would yield a potential windfall to insurers whose rates exceed the "single rate" contemplated by the *San Gabriel* court. Second, permitting the late invocation of section 2860 is simply inconsistent with the *other* purpose of the statute – *i.e.*, to permit those insurers who undertake a defense and control the litigation to reasonably limit the payment of attorneys' fees. *See Pacific Indemn. Co.*, 63 Cal. App. 4th at 1544 ("[it] forfeit[s] its right to participate in or control the . . . defense, whether based on Civil Code section 2860 or otherwise. . . . ."). Third, a late invocation of section 2860 ignores courts' broader concern that "the insurer having breached its contract to defend should be charged with a heavy burden of proof of even partial freedom from liability for harm to the insured which ostensibly flowed from the breach." *Foxfire, Inc. v. New Hampshire Ins. Co.*, Nos. C-91-2940, C-91-4365, 1994 WL 361815, at * 2 (N.D. Cal. July 1, 1994). Nor does it comport with California courts' treatment of similar situations where a single primary insurer's acceptance of defense is insufficient to cover all defense costs. *See Wint v. Fidelity & Cas. Co.*, 9 Cal.3d 257, 263 (1973) ("[W]here more than one insurer owes a duty to defend, a defense by one constitutes no excuse of the failure of any other insurer to perform.").

The Court nonetheless recognizes Evanston's attempted distinction between invoking 2860(c) (which Evanston does not claim to do) and limiting the recovery of fees incurred after another insurer has accepted the defense. But the text of the statute does not speak to the insured's obligations; rather, it discusses the insurer's liability. *See* Cal. Civ. Code § 2860(c) ("The insurer's obligation to pay fees to the independent counsel selected by the insured is limited to the rates . . ."). There is nothing in the statute that precludes an insured from retaining counsel that charges a rate in excess of this amount, and in this situation, the Court considers it inequitable to allow an insurer that declines to defend to later refuse to pay amounts in excess of the statutory limit. Section 2860 is designed to benefit the participating insurer, not punish the insured.

Accordingly, the Court [GRANTS] Plaintiffs' MSJ and [ORDERS] that Evanston is liable

for the payment of "overage" fees paid prior to its July 20, 2009 acceptance of the MGA Parties' defense. Evanston's liability shall be further construed in light of the Court's June 24, 2009 order.

### D. Effect of Evanston's Reservation of Rights

By a July 20, 2009 letter to the MGA Parties, Evanston agreed to undertake a defense in compliance with the Court's June 24, 2009 order. In that letter, Evanston reserved its rights to later seek reimbursement from the MGA Parties for defense costs not covered under the two Evanston policies considered by the Court's order. The MGA Parties argue that Evanston cannot "retroactively . . . absolve it[self] from liability for the costs of defending the entire action *prior* to July 20, 2009, when it was in breach of its duty to defend." Reply in Support of Pls.' MSJ at 9:8-12.

Evanston's letter to the MGA Parties expressly states that "[b]y agreeing to participate in MGA's defense, [Evanston] does not agree it is liable to MGA for any portion of past defense fees and costs. . . ." *See* Bidart Decl., Exhibit 12 at pp. 1-2. However, the fact that Evanston's letter disclaims liability does not mean that Evanston "*refused* to pay for any past defense costs," as the MGA Parties conclude. *See* Reply in Support of Pls.' MSJ at 10:4.

Both parties rely upon *California v. Pac. Indem. Co.*, 63 Cal. App. 4th 1535 (1998), which in part construed the California Supreme Court's important holdings in *Buss v. Superior Court*, 16 Cal.4th 35 (1997) and *Aerojet-General Corp. v. Transp. Indem. Co.*, 17 Cal.4th 38 (1997). In *Pacific*, the defendant insurer was on the risk under only a one year policy and the claim at issue covered a 30 year period. 63 Cal. App. 4th at 1546. The insurer disputed its liability and also sought to have its duty to defend apportioned with its insured on the grounds that its policy coverage was for only one year. *Id.* at 1548. The court rejected this claim on the grounds that the insurer could seek reimbursement only after the action was over. *See id.* ("[Self-insurance] is . . . 'repugnant to the [very] concept of insurance . . .'") (citing *Aerojet*, 17 Cal.4th at 72).

The court also disposed of the insurer's argument that it should not be liable for costs incurred by the state in prosecuting an action that tied into the claim in which it was the defendant. *See* 63 Cal. App. 4th at 1548-49 ("[I]n the exceptional case, wherein the insurer has breached its duty to defend, it is the insured that must carry the burden of proof on the existence and amount of the . . . expenses, which are then presumed to be reasonable and necessary as defense costs.")

16

1  (quoting *Aerojet*, 17 Cal.4th at 64).

2  Whether the costs were reasonable and necessary defense costs was a separate determination from whether they were "covered" costs at all. On this issue, the defendant insurer argued that certain claims "were not even potentially insured" and sought compensation from its insured on that basis. 63 Cal. App. 4th at 1549. However, the court rejected this request on the grounds that "[b]y repudiating its duty to defend and providing no defense, [defendant insurer] has nothing from which to seek reimbursement." *Id.* The MGA Parties use this sentence to argue that where an insurer has rejected a defense, it may not reserve its rights to later seek reimbursement for defense costs incurred in for claims not covered by the policy. *See* Reply in Support of Pls.' Opp'n at 11.

10  But Evanston does not seek immediate reimbursement. Rather, Evanston's reservation of rights is designed to ensure that, *after it provides the MGA Parties with a defense and after the Mattel litigation is complete*, it can seek reimbursement from the MGA Parties for those costs not "even potentially covered because it did not even possibly embrace any triggering harm of the specified sort within its policy period or periods caused by an included occurrence." *See Pacific Indem. Co.*, 63 Cal. App. 4th at 1550 (quoting *Aerojet*, 17 Cal.4th at 71). Preventing Evanston from doing so merely because it refused to provide a defense would impose a steep penalty for a breach of contract and reward the MGA Parties with a windfall in the process. The law of California does not countenance such an outcome, because it is inequitable and results in a distribution not bargained for between the parties. *See id.* at 1550 ("Under the policy, the insurer does not have a duty to defend the insured as to the claims that are not even potentially covered. With regard to defense costs for those claims, 'enrichment' of the insured by the insurer through the insurer's bearing of unbargained-for defense costs is inconsistent with the insurer's freedom under the policy and therefore must be deemed 'unjust.'") (quoting *Buss*, 16 Cal.4th at 50-51).

24  The MGA Parties make two additional arguments that warrant discussion. First, the MGA Parties argue that a reservation of rights issued after the duty to defend is triggered is invalid because it does not give the insured an opportunity "to decide whether to accept the insurer's terms for providing a defense, or instead to assume and control its own defense." *See* Reply to Pls.' MSJ at 10:9-12 (quoting *Scottsdale*, 36 Cal.4th at 657). The MGA Parties have been afforded this

17

opportunity by Evanston's July 20, 2009 letter. Moreover, as *Scottsdale* made clear, the risk to an insurer from denying a defense is the potential of a bad faith suit by the insured. *See* 36 Cal.4th at 660. There is simply no need to issue a reservation of rights where the insurer, as here, has not yet provided a defense. The MGA Parties' analysis is more akin to a breach of contract analysis, which is performed after the termination of the litigation. *See, e.g.*, *Hogan v. Midlands National Ins. Co.*, 3 Cal.3d 553, 564 (1970); *Peterson Tractor Co. v. Travelers Indem. Co. Of Ill.*, 156 Fed. Appx. 21 (2005). The Court's June 24, 2009 order did not hold that Evanston had breached its duty to defend, but merely declared that, as a matter of law, Evanston was on the risk for the claims contained in the SAAC. As the parties' recognize, this case is unique because the Mattel litigation is ongoing and so, by accepting the MGA Parties' defense, Evanston has undertaken a continuing obligation to pay for the defense costs in that litigation.

        Second, the MGA Parties liken a reservation of rights to an invocation of section 2860's fee limits, noting that an insurer that denies its duty to defend may not later rely upon 2860 and, so too, should be precluded from reserving its rights to seek reimbursement. However, the courts have restricted access to section 2860's protections for equitable and not punitive reasons. Failing to undertake a defense precludes the insurer from playing a part in the selection of the insured's counsel and the insured should not be expected to constrain its hiring of outside counsel according to fee rates applicable to an insurer who has refused to pay. By contrast, failing to undertake a defense has little to do with whether an insurer should have to pay for claims not bargained for, paid for, or covered under its policy with the insured. Courts frequently permit retroactive *determinations* that particular claims are not covered under a policy despite the inconvenience to an insured of a court's belated determination that the insured must bear certain costs incurred in defense of a claim. *See Pacific Indem. Co.*, 63 Cal. App. 4th at 1550.

        Accordingly, the Court [DENIES] Plaintiffs' MSJ to the extent that it seeks a judicial declaration foreclosing Evanston from seeking reimbursement for any defense costs connected with the Mattel litigation that are not even potentially covered under the Evanston policies considered by this Court's June 24, 2009 order.

**IV.    Disposition**

For the foregoing reasons, the Court hereby [GRANTS IN PART AND DENIES IN PART] Plaintiffs' MSJ and [DENIES] Defendants' MSJ and ORDERS as follows:

1. Defendants' MSJ is [DENIED] to the extent that it seeks an order and declaration that Evanston is not liable to Plaintiffs for any amount of past defense expenses in the Mattel litigation in excess of the amounts reimbursed by the MGA Parties' other insurers;

2. Defendants' MSJ is [DENIED] to the extent that it seeks an order and declaration that Evanston is not liable for any of the MGA Parties' defense costs incurred before the MGA Parties' tender of the defense of the Mattel litigation to Evanston on October 22, 2007;

3. Plaitniffs' MSJ is [DENIED] to the extent that it seeks an order and declaration that Evanston is liable for the costs of defending both covered and uncovered claims during the period of time when it did not provide a defense of the Mattel litigation;

4. Plaintiffs' MSJ is [GRANTED] to the extent that it seeks an order and declaration that the hourly rate limitation of California Civil Code § 2860(c) is not applicable to fees incurred when Evanston was in breach of its duty to defend.

IT IS SO ORDERED.

DATED: February 1, 2010

_____
DAVID O. CARTER
United States District Judge