O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

|  |  |
|---|---|
| MGA ENTERTAINMENT, INC., et al. | Case No.: ED CV 08-0457-DOC(RNBx) |
| Plaintiffs, | |
| vs. | |
| THE HARTFORD INSURANCE GROUP, et al., | **ORDER:** |
| Defendants. | **(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 1 REGARDING PLAINTIFF'S CLAIM FOR CERTAIN COSTS (Dkt. 357); AND** |
| | **(2) DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 3 FOR OFFSET (Dkt. 364)** |

Before the Court are two motions filed by Defendants Evanston Insurance Company ("Evanston"), Markel Corporation, and Markel Underwriting Managers, Inc. (all three collectively referred to as "Evanston Defendants"): (1) Motion for Partial Summary Judgment No. 1 Regarding Plaintiff MGA Entertainment's Claim for Certain Costs ("Certain Costs Motion") (Dkt. 357); and (2) Motion for Partial Summary Judgment No. 3 for Offset ("Offset Motion") (Dkt. 364). These are two of four partial summary judgment motions brought by the

Evanston Defendants against Plaintiffs MGA Entertainment, Inc. ("MGA"), and Isaac Larian (collectively, "MGA Plaintiffs").  After considering the motion, related filings, and oral argument, the Court: (1) GRANTS IN PART and DENIES IN PART the Certain Costs Motion (Dkt. 357); and (2) DENIES the Offset Motion (Dkt. 364).[1]

## I.      Background

The gravamen of the Evanston Defendant's argument is that, even if this Court is correct that the Evanston Defendants owe a duty to defend the MGA Plaintiffs, the Evanston Defendants are entitled to reduce their liability either because: (1) the MGA Plaintiffs' measurement of their fees and costs is incorrect as a matter of law; (2) the Evanston Defendants are entitled to reduce their liability by the amount of fees and costs incurred for work that is not even potentially covered by the policy; and (3) the Evanston Defendants are entitled to an offset of the amount in fees in costs that this Court awarded in the underlying action to the MGA Plaintiffs.

While some of the Evanston Defendants' arguments are based in law, others are rooted in vague allegations of misdeeds done by the MGA Plaintiffs to other insurers or law firms the MGA Plaintiffs hired to defend themselves after the Evanston Defendants refused to pay for a defense.[2]  Because the Court concludes, infra, that the Evanston Defendants have not made any

---

[1] In an earlier Order, the Court denied the Evanston Defendants' summary judgment motion on whether they are alter egos.  Given that holding and given that Defendants Markel Corporation and Markel Underwriting Managers, Inc., expressly "seek the same relief sought by Evanston in this motion," the Court concludes that, to the extent that Evanston is entitled to relief, all the Evanston Defendants are entitled to such relief.  *See* Mem. (Sealed Dkt. 365) at 1 n. 1.

[2] For example, the Evanston Defendants' opening salvo in their Motion is that the MGA Plaintiffs "use their insurance policies as a profit center."  Mem. (Sealed Dkt. 358) at 1:2-3.  The Evanston Defendants' accusation calls to mind the old adage about throwing stones and glass houses.  An insurance company that saved millions by refusing to defend its insured until

legally cognizable arguments based on these alleged harms to parties who are not the Evanston Defendants, these allegations are not recounted here.

Unless stated otherwise, the parties do not genuinely dispute of the following facts. In addition to the filings by the parties regarding these two motions, the Court relies on other judicially-noticeable documents regarding the history of this case and the underlying suit.

### a. The Evanston Defendants' 2001-02 Policy

Defendant Evanston Insurance Company ("Evanston") is an insurer that issued Plaintiff MGA Entertainment, Inc., ("MGA") two Commercial General Liability policies for calendar years 2001 and 2002 (collectively, "2001-02 Policy"). *See* Pls. Statement of Genuine Issues (Dkt. 414) at 8.

The 2001-02 Policy limits coverage to a person or entity who is the "insured," a definition that includes MGA's "employees . . . for acts within the scope of their employment by [MGA] or while performing duties related to the conduct of [MGA's] business." *See* Pls. Statement of Genuine Issues (Sealed Dkt. 408) at 17.

The 2001-02 Policy also purportedly contains an exclusion regarding copyright that the Evanston Defendants contend is relevant to the Certain Costs Motion. Curiously, neither the Evanston Defendants' briefs nor their Statement of Facts direct this Court to a page citation for the language in their voluminous policy. As such, the statement of facts appears to merely summarize the Evanston Defendants' legal conclusion, a conclusion that the MGA Plaintiffs are justified in disputing. *See* Pls. Statement of Genuine Issues (Dkt. 414) at 31.

### b. MGA Tenders the First Relevant Pleading  (SAAC) in the Underlying Suit

On July 12, 2007, Mattel, the claimant in the underlying litigation against MGA, filed a Second Amended Answer and Counterclaims ("SAAC"). *See* Pls. Statement of Genuine Issues (Dkt. 414) at 3; Court's Final Pre-Trial Conference Order (04-9049 Dkt. 3917 at 11) (summarizing Mattel's seven claims).

---

ordered to do so by this Court 20 months after the initial refusal might wish to be more circumspect about accusing others of using an insurance policy for profit.

On October 22, 2007, MGA tendered the SAAC to the Evanston Defendants and they refused to defend.  (Sealed Dkt. 371-1).

### c.  MGA Loses the First Trial in the Underlying Litigation

In 2008, the MGA Plaintiffs' affirmative counterclaims-in-reply were bifurcated and the MGA Plaintiffs were only permitted to defend Mattel's allegations.  In a trial before Judge Larson, Mattel prevailed on each of its claims against the MGA Plaintiffs.  On the basis of the jury's special and general verdicts and after independently examining certain evidence, Judge Larson placed MGA's trademarks in a constructive trust and enjoined MGA from continuing to sell certain dolls.  MGA appealed.  *See* Order (11-1063 Dkt. 32) at 2-3 (summarizing procedural history of underlying litigation).

### d.  Prior Court Order Holding that the Evanston Defendants Owed a Duty to Defend

On January 7, 2009, MGA filed the present action against Evanston, Markel Corporation, and Markel Underwriting.  *See* Pls. Statement of Genuine Issues (Dkt. 414) at 11.  On June 24, 2009, Judge Larson ruled on cross-motions for summary judgment that Evanston's "duty to defend was triggered by the potential for coverage based on allegations of product disparagement" in the SAAC.  *Id.*  In response to Judge Larson's Order, Evanston provided a defense to MGA in the underlying litigation.[3]  *Id.*

### e.  The Evanston Defendants Challenge Their Duty to Defend Under an Amended Pleading (FAAC) in the Underlying Suit

On April 12, 2010, Mattel filed a Fourth Amended Answer and Counterclaims (FAAC), which amended its previous pleadings to add new parties and claims.  *Id.* at 5.

In an Order issued on February 14, 2012, this Court granted MGA Summary Judgment on the issue of whether the Evanston Defendants owed a duty to defend under the FAAC.  *See* Order Amending Prior Order (Dkt 510).  This Court held that the Evanston Defendants had

---

[3] While not relevant to the present motion, the parties dispute the amount that Evanston has paid MGA for its defense.  *See* Pls. Statement of Genuine Issues (Dkt. 414) at 11-12.

"failed to negate all facts" suggesting the potential for coverage under the FAAC and that the Evanston Defendants were "not entitled to judgment as a matter of law—and even though there is no genuine dispute as to material facts."  *See* Order (Dkt 480) at 18.

### f.  MGA Wins On Appeal in the Underlying Litigation

On July 22, 2010, MGA prevailed on its appeal of the underlying litigation.  In vacating the constructive trust and injunction, the Ninth Circuit held that the equitable relief was impermissibly broad and predicated upon jury verdicts tainted by erroneous instruction.  *See* Order (11-1063 Dkt. 32) at 3 (summarizing procedural history of underlying litigation).

This case was remanded to this Court.

### g.  On Remand, the MGA Plaintiffs Win the Second Trial in the Underlying Litigation

On August 16, 2010, after the Ninth Circuit reversed and remanded, MGA filed counterclaims-in-reply against Mattel in the underlying litigation.  *See id.*

On October 22, 2010, in response to the Ninth Circuit ruling, this Court granted MGA's motion for a new trial on all claims and issues tried to the jury previously, finding that the indistinct and inseparable claims were all infected by instructional error.  The Court separately discarded the earlier bifurcation of claims, and ordered that all pending claims between the parties be tried in a single proceeding to commence on January 11, 2011.  *See id.*

### h.  This Court Awards the MGA Plaintiffs Fees and Costs in the Underlying Litigation

On August 4, 2011, this Court rendered judgment on the merits in the underlying litigation pursuant to a jury verdict.  *See id.* at 5.  The Court awarded fees and costs to the MGA Plaintiffs for: (1) MGA's defense of Mattel's copyright infringement claim, which totaled $137,355,177; and (2) MGA's prosecution of its counterclaim-in-reply under the California

Uniform Trade Secret Act, which totaled $2,522,000.  *See* Pls. Statement of Genuine Issues (08-457 Sealed Dkt. 417) at 4.[4]

### i.   The Underlying Litigation Is Currently On Appeal

The underlying litigation, including the Court's award of fees and costs to MGA, is on appeal to the Ninth Circuit.

### j.   The Present Motions

On November 2, 2011, the Evanston Defendants brought the present motions: (1) Motion for Partial Summary Judgment No. 1 Regarding Plaintiff MGA Entertainment's Claim for Certain Costs ("Certain Costs Motion") (Dkt. 357); and (2) Motion for Partial Summary Judgment No. 3 for Offset ("Offset Motion") (Dkt. 364).

### k.   The Total Fees and Costs that the MGA Plaintiffs Were Billed by Counsel in the Underlying Suit and Now Seek From the Insurers

The MGA Plaintiffs were invoiced for $175 million in attorney's fees and costs in the underlying litigation.  *See* Pls. Statement of Genuine Issues (Sealed Dkt. 417) at 6.  The MGA Plaintiffs are seeking to hold the Evanston Defendants liable for approximately $94 to $96 million in attorney's fees and costs.  *See* Pls. Statement of Genuine Issues (Sealed Dkt. 417) at 6 ($80 million is sought in the present action and approximately $14 to $16 million has already been paid).

### l.   Evidence of Whether the MGA Plaintiffs Are Obligated to Pay Certain Fees and Costs Invoiced in the Underlying Suit

The Evanston Defendants allege that the $175 million invoiced to the MGA Plaintiffs includes amounts that the MGA Plaintiffs either have not paid or are not obligated to pay.

---

[4] *See also* Order (04-9049 Dkt. 10703) at 15:27, 16:4-5 (awarding $105,688,073 in attorney's fees and $31,677,104 in costs to MGA for MGA's defense of Mattel's copyright claim); Order (04-9049 Dkt. 10702) at 1:23-24; 11:12-14 (awarding $2,172,000 in attorney's fees and $350,000 in costs to MGA for MGA's prosecution of its trade secret misappropriation counterclaim-in-reply under the California Uniform Trade Secret Act).

### 1.  Discounts

The Evanston Defendants contend that the $175 million invoiced includes $9,456,008 in "discounts," which is allegedly the difference between the amount the MGA Plaintiffs are demanding from Evanston and the amount they have actually paid their counsel.[5]

### 2.  Skadden settlement

The Evanston Defendants contend that the $175 million invoiced includes $13,263,529, which is allegedly the difference between the amount billed by Skadden and the amount the MGA Plaintiffs are obligated to pay under a settlement with Skadden.  The parties agree that, as of August 31, 2011, the MGA Plaintiffs had an outstanding obligation to pay Skadden $24,263,529.  *See* Pls. Statement of Genuine Issues (Sealed Dkt. 408) at 24-25.

The settlement agreement states that the "aggregate amount of Skadden Fee and Expense Obligations required to be paid pursuant to this paragraph shall not exceed $11,000,000."  *See* Khetan Decl. (Sealed Dkt. 359) Ex. 28 ("Skadden Settlement") at 2.

The MGA Plaintiffs General Counsel has stated in her deposition that Skadden contends the $11 million amount in the settlement is void because MGA breached the settlement's terms.  *See* Schuetze Decl. Ex. 8 (Sealed Dkt. 409) at 11-12.

### 3.  $3.5 million that MGA Plaintiffs are allegedly refusing to pay Orrick

The Evanston Defendants contend that the $175 million invoiced includes at least $3.5 million that the MGA Plaintiffs are refusing to pay Orrick.

The parties agree that MGA Plaintiffs are currently in a fee dispute with Orrick.  As part of that dispute, the MGA Plaintiffs contend that they do not owe at least $3.5 million in fees and costs that Orrick billed.  *See* Pls. Statement of Genuine Issues (Sealed Dkt. 408) at 29.

### m. Evidence of Whether $6,846,272 in Fees and Costs Was Incurred in the Underlying Suit to Prosecute MGA's Affirmative Counterclaims-in-Reply

---

[5] As the Court explains later in this Order, although the MGA Plaintiffs dispute the Evanston Defendants' contentions, this dispute is not relevant to the resolution of this motion.

The parties agree that $6,846,272 in fees and costs were incurred in litigating an affirmative counterclaims-in-reply in the underlying suit.  *See* Pls. Statement of Genuine Issues (Sealed Dkt. 408) at 18-19.  In addition, the parties agree that $2,522,000 in fees and costs were incurred in litigating an affirmative counterclaims-in-reply under the California Uniform Trade Secret Act.  *See id.* at 14.

The MGA Plaintiffs also state that $4,588,113 of these fees and $77,486 of these costs are attributable to work done *before* they tendered the underlying litigation to the Evanston Defendants.  *See* Opp'n (Dkt. 407) at 6.  These pre-tender fees are identified as "matter 8" in the bills from O'Melveny & Myers to the MGA Plaintiffs.  *See id.*

The MGA Plaintiffs dispute whether another $766,948 incurred to transition from O'Melveny & Myers to Skadden was incurred for work done before tender.  *See* Pls. Statement of Genuine Issues (Sealed Dkt. 408) at 27.  The "Walker Report" that mentions this $766,948 is silent about when this transition occurred.  *See* Khetan Decl. (Sealed Dkt. 359) Ex. 30 ("Walker Report") at 21.

### n.  Evidence of Whether $137 to $162 Million in Fees and Costs Was Incurred in the Underlying Suit to Defend Mattel's Copyright Infringement Claim

The Evanston Defendants are not clear on the amount and source of the fees and costs which they argue they are not obligated to pay.  At one point in their briefs, they state that these costs are the $162 million that the MGA Plaintiffs *sought* to recover from Mattel in the underlying action under the Copyright Act, 17 U.S.C. § 505, which provides a discretionary award to a prevailing party.  *See* Mem. (Sealed Dkt. 358) at 19.

At another point in their briefs, the Evanston Defendants describe the fees and costs as the $137 million that this Court ultimately *awarded* under the Copyright Act.  In the underlying action, this Court awarded $105,688,073 in fees and $31,677,104 in costs to the MGA Plaintiffs under the Copyright Act.  *See* Order (04-9049 Dkt. 10703) at 1-2; Pls. Statement of Genuine Issues (Sealed Dkt. 408) at 14.

### o.  Evidence of Whether Fees and Costs Were Incurred in the Underlying Suit to Defend or Represent Non-Insureds

-8-

The Evanston Defendants seek to reduce their liability by fees and costs that the Evanston Defendants contend the MGA Plaintiffs incurred in the underlying suit to defend or represent people and entities that are not "insureds," as defined by the 2001-02 Policy.

The parties agree that MGA incurred $4,158,528 for defending Carter Bryant, a former employee of Mattel who developed the idea for the Bratz brand over which Mattel alleged ownership in the underlying litigation. *See* Pls. Statement of Genuine Issues (Sealed Dkt. 408) at 19-20.  MGA incurred $1,301,901 for defending Gustavo Machado, an MGA employee. *See id.* at 20-22.  MGA incurred $1,693,223.74 for representing witnesses. *See id.* at 22-23.

The parties agree that MGA incurred $6,461,860 for defending OMNI 808. *See* Pls. Statement of Genuine Issues (Sealed Dkt. 408) at 20.  However, the MGA Plaintiffs state that they are not seeking from the Evanston Defendants "any fees related to OMNI 808." *See* Opp'n (Dkt. 407) at 9.

### p.  Evidence of Whether Fees and Costs Were Incurred in the Underlying Suit to Defend A Different Suit That Was Never Tendered

The Evanston Defendants seek to reduce their liability by $38,866.19 in fees and costs that the Evanston Defendants contend the MGA Plaintiffs incurred to defend a different suit that was never tendered.

The parties agree that the attorney, Lenczner Slaght, who billed these fees and costs "did not represent MGA or Larian in the [underlying litigation]." *See* Pls. Statement of Genuine Issues (Sealed Dkt. 408) at 10-11.  However, the MGA Plaintiffs contend that these fees are for the defense of Janine Brisbois. *See* Opp'n (Sealed Dkt. 407) at 12.  The parties do not dispute that Janine Brisbois was an MGA employee who was the subject of several allegations in the FAAC filed in the underlying litigation. *See* Req. Judicial Notice (Dkt. 363) Ex. 2 (FAAC) at ¶¶ 59, 61, 85; Evanston's Responses (Sealed Dkt. 448) at 12.

### q.  Evidence of Whether Fees and Costs Were Incurred in the Underlying Suit to Analyze Conflicts of Interest for Prospective Counsel

The Evanston Defendants seek to reduce their liability by $13,336.23 in fees and costs that the MGA Plaintiffs incurred to analyze conflicts of interest for prospective counsel in the

underlying litigation.  *See* Pls. Statement of Genuine Issues (Sealed Dkt. 408) at 37-38; Evanston's Responses (Sealed Dkt. 448) at 11.

## II.     Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The court must view the facts and draw inferences in the manner most favorable to the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact.  *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the opposing party must set out specific facts showing a genuine issue for trial; merely relying on allegations or denials in its own pleading is insufficient.  *See Anderson,* 477 U.S. at 248-49.  A party cannot create a genuine issue of material fact simply by making assertions in its legal papers.  *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982).  Rather, there must be specific, admissible evidence identifying the basis for the dispute.  *Id.*  The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]."  *Anderson*, 477 U.S. at 252.

## III.    Summary of Law Regarding Insurer's Duty to Defend and Entitlement to Reimbursement

The parties offered very little relevant case law to guide this Court in these two motions which raised issues of first impression in California.  To remedy this oversight, the Court provides the following overview of California law.

### a. A Duty to Defend Exists If Any Part of Any Allegation in the Underlying Suit, If Proven, Would Create a Liability Covered By the Insurer's Policy

An insurer has a "very broad duty to defend its insured under California law." *Anthem Electronics, Inc. v. Pac. Employers Ins. Co*., 302 F.3d 1049, 1054 1055 (9th Cir. 2002). Insurers owe a duty to defend any suit that "potentially seeks damages within the coverage of the policy."[6] *Hyundai Motor Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 600 F.3d 1092, 1097 (9th Cir. 2010).

A duty to defend arises if any part of a claim in the underlying suit could be potentially covered by the insurer's policy given either: (1) "any facts stated or fairly inferable in the [underlying suit's] complaint"; or (2) any facts "otherwise known or discovered by the insurer." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654-655, 31 Cal.Rptr.3d 147 (2005). The duty to defend is not extinguished "until the insurer negates all facts suggesting potential coverage." *Id.* In determining whether a duty to defend exists, courts compare the terms of the insurer's policy with the facts alleged in the underlying suit's complaint and, if available, extrinsic facts known to the insurer that suggest the claim may be covered. *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 295, 24 Cal.Rptr.2d 467 (1993). In determining the scope of coverage, an insurer's policy terms are given their "plain meaning," that is, the meaning a layperson would ordinarily attach to them. *See Waller v. Truck Ins. Exchange, Inc.*, 900 P.2d 619, 627 (1995). Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor. *Hyundai*, 600 F.3d at 1097.

The policy reason for a broad duty to defend is to avoid leaving an insured "defenseless as a result of apparently self-serving decisions by [insurers] to deny a duty to defend pending resolution of substantive coverage issues." *See Buss v. Superior Court*, 16 Cal. 4th 35, 49 (1997). For this reason, the duty to defend does not require that the "facts supporting a covered

---

[6] In addition to this common law rule, the 2001-02 Policy also imposed a "duty to defend any 'suit' seeking" damages for an "advertising injury." *See* Khetan Decl. (Dkt. 362) at 49 (Section I(B)(1)(b) – Coverage).

claim predominate or generate the claim." *Pension Trust Fund for Operating Engineers v. Federal Ins. Co.*, 307 F.3d 944, 951 (9th Cir. 2002). "California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty." *Id.*

### b. If a Duty to Defend Exists For *Any* Claim in the Underlying Suit, the Insurer Owes a Duty to Pay Defense Fees and Costs for the *Entire* Underlying Suit

If the insurer has a duty to defend at least part of one claim in the underlying suit—that is, if at least part of one claim is potentially covered—the insurer has a duty to defend the "entire" underlying suit. *Buss v. Superior Court*, 16 Cal. 4th 35, 49 (1997); *Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th 38, 60 (1997) ("[T]his analysis applies . . . not only between claims but also between parts of a single claim."). This duty to defend claims that have no potential for coverage is implied in law, not by the terms of the insurance policy. *See Buss*, 16 Cal. 4th at 49 ("as to the claims that are not [potentially covered], the insurer may give, and the insured may get, more than they agreed"); *Aerojet*, 17 Cal. 4th at 62 n.13 (1997) ("[D]efense costs . . . are not limited by the policy, expressly or otherwise, but impliedly extend to all such expenses as are reasonable and necessary."); *State Farm General Ins. Co. v. Mintarsih*, 175 Cal. App. 4th 274, 286 (2009) (explaining that *Buss* distinguished between a "contractual" duty to defend—which applies to the claims that are "at least potentially covered"—and an "implied in law" duty to defend—which applies to all other claims in the underlying suit if at least one claim is potentially covered).

The policy reason for an insurer's implied-in-law duty to defend the entire action is that this duty is often triggered early in the underlying suit, when engaging in "time consuming" speculation as to whether all claims are *actually* covered would deny the insured exactly the thing it purchased with its premiums: the "mounting and funding of a defense . . . in order to avoid or at least minimize liability." *See Buss*, 16 Cal. 4th at 46, 49 (noting that to "defend meaningfully, the insurer must defend immediately" and "entirely"); *Gray v. Zurich Ins. Co.*, 65

Cal. 2d 263, 276 (1966) ("[Given] the plasticity of modern pleading, we should hardly designate the third party [who files the underlying suit] as the arbiter of the policy's coverage.").

### c. Defense Fees and Costs Are Those Incurred While the Duty to Defend Existed and Which Were Reasonable and Necessary to Minimize Liability

The "defense costs that the insurer must incur in fulfilling its duty to defend" are: (1) incurred for work that is "conducted within the temporal limits of the insurer's duty to defend"; (2) incurred for *work* that is "reasonable and necessary . . . to avoid or at least minimize liability"; and (3) for an *amount* that is "reasonable and necessary" to minimize liability. *See Aerojet*, 17 Cal. 4th at 61. The type of work and amount of fees and costs are reasonable and necessary if "a reasonable insured would have engaged in a similar defense strategy, which necessarily involves a consideration of whether the benefits of the strategy are worth the cost." *Barratt*, 102 Cal. App. 4th at 862.

Where an insurer "has breached its duty to defend, it is the insured that must carry the burden of proof on the existence and amount of the . . . expenses, which are then presumed to be reasonable and necessary as defense costs." *Aerojet*, 17 Cal. 4th at 64. Then the "insurer that must carry the burden of proof that they are in fact unreasonable or unnecessary." *Id.*

### d. An Insurer that Owes A Duty to Defend Is Entitled to Reimbursement From the Insured for Defense Fees and Costs that Are Solely Attributable to Claims in the Underlying Suit That Have No Potential for Coverage

An insurer that has paid defense fees and costs in the underlying suit is entitled to reimbursement from the insured for the amounts that are "allocated *solely* to a part of a claim that is not even potentially covered." *Aerojet*, 17 Cal. 4th at 69 (emphasis added); *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal. 4th 643, 660 n.5 (2005). An insurer is not entitled to reimbursement of amounts that "can be allocated *jointly* to the claims that are at least potentially covered and to those that are not." *Buss*, 16 Cal. 4th at 53 (emphasis added). Thus, an insurer is not entitled to reimbursement if the disputed amounts "serve more than one objective" and one of these objectives is the defense of a potentially covered claim, even if the other objectives are

not potentially covered.  *See Barratt American, Inc. v. Transcontinental Ins. Co.*, 102 Cal. App. 4th 848, 860 (2002).

The insurer seeking reimbursement must carry the burden of proof by a preponderance of the evidence.  *Buss*, 16 Cal. 4th at 53.  Meeting this burden of showing that defense fees and costs are allocated solely to claims that are not even potentially covered is a task that, "if ever feasible," is "extremely difficult."   *Id.* at 57-58; *see also Peterson Tractor Co. v. Travelers Indem. Co.*, 156 Fed. Appx. 21, 23-24 (9th Cir. 2005) (reversing judgment favoring insurer where district court improperly placed burden of proof on the *insured* to allocate costs between covered and uncovered claims because, although the insured "initially" bears the burden to show that "at least a portion of" the fees and costs sought are "attributable to claims that were covered by the insurance policy," once this burden is met the "burden of proof shifts to the insurer to show what portion . . . is attributable to covered claims").

An insurer's right to reimbursement of defense fees and costs that are not even potentially covered is a "quasi-contractual" right, not one based on the terms of the contract.  *Buss*, 16 Cal. 4th at 50-51.  The insurer is entitled to these costs as "restitution" to prevent the insured from being unjustly enriched by receiving defense costs that exceed what was bargained for in the insurance contract.  *Id.*; *Am. Motorists Ins. Co. v. Superior Court*, 68 Cal. App. 4th 864, 874 (1998) ("[An insurer's] right to reimbursement for allegedly excessive or unnecessary fees and costs is a claim for equitable restitution, not a claim for damages.").

The policy reason for an insurer having a quasi-contractual right to reimbursement is to prevent an insurer from being tempted to deny a defense of an underlying suit where some or most of the claims are not covered.  *Buss*, 16 Cal. 4th at 52-53 ("Without a right of reimbursement, an insurer might be tempted to refuse to defend an action in any part— especially an action with many claims that are not even potentially covered and only a few that are—lest the insurer give, and the insured get, more than they agreed. With . . . a right [of reimbursement], the insurer would not be so tempted, knowing that, if defense of the claims that are not even potentially covered should necessitate any additional costs, it would be able to seek reimbursement.").

### e. An Insurer Becomes Entitled to Reimbursement Only After Its Duty to Defend Has Ended

An insurer becomes entitled to reimbursement from its insured only *after* the insurer's duty to defend *ends*. *Buss*, 16 Cal. 4th at 59 n. 23 (explaining that "nothing" but a superseding contract between the insurer and insured "could change the insurer's duty to defend . . . into an obligation merely to *pay* defense costs *only* as to the claims that are at least potentially covered" because the duty to defend requires the insurer "to mount and fund a defense" and "to defend entirely . . . both the claims that are at least potentially covered and also those that are not"); *Aerojet*, 17 Cal. 4th at 60 (noting that an insurer that has a duty to defend "must incur reasonable and necessary costs" to defend the insured and do so "from as early as tender of the defense through as late as conclusion of the action"); *Am. Motorists Ins. Co. v. Superior Court*, 68 Cal. App. 4th 864, 874 (1998) ("[W]here . . . a trial court grants a motion for summary adjudication establishing the existence of a duty to defend and orders the immediate payment of defense costs, the [insurer] must pay as ordered and all issues concerning the [insurer's] right to reimbursement of all or some part of the fees and costs thus paid are deferred until such time as that issue is ripe.").

The duty to defend ends either when the underlying action "is concluded" or the insurer meets its burden to show that "no claim is potentially covered." *Buss*, 16 Cal. 4th at 46; *Aerojet*, 17 Cal. 4th at 61 (describing "the temporal limits of the insurer's duty to defend" as "between tender of the defense and conclusion of the action").

### f. An Insurer's Right to Reimbursement of Defense Fees and Costs Is the Corollary of the Insurer's Duty to Defend the Entire Underlying Suit

In sum, the insurer's quasi-contractual right to reimbursement of defense fees and costs for claims that are not even potentially covered is the *corollary* of the insurer's implied-in-law duty to defend the entire underlying suit even if only part of a claim is potentially covered. Although the insurer's *initial* payment of defense costs for claims that are not even potentially covered means that the "the insurer may give, and the insured may get, more than they agreed,"

the insurer's right to reimbursement ensures that, *ultimately*, the insured will not be unjustly enriched.  *See Buss*, 16 Cal. 4th at 49, 60-61.

### IV.   Impact of Prior and Contemporaneous Orders On This Order

#### a.  The Evanston Defendants Owed and Continue to Owe A Duty to Defend

The Court has now twice granted MGA summary judgment and held that the Evanston Defendants owed a duty to defend as a matter of law.

On June 24, 2009, Judge Larson held that the Evanston Defendants had a duty to defend based on "allegations of product disparagement" in Mattel's Second Amended Answer and Counterclaims ("SAAC") in the underlying action.  *See* Pls. Statement of Genuine Issues (Dkt. 414) at 11.  Because at least part of a claim in the underlying action was *potentially* covered, the Evanston Defendants owed a duty to defend the *entire* underlying suit.  *See Buss v. Superior Court*, 16 Cal. 4th 35, 49 (1997); *Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th 38, 60 (1997).

In addition, this Court held that the Evanston Defendants owed a duty to defend under a later pleading in the underlying action, Mattel's Fourth Amended Answer and Counterclaims ("FAAC").  *See* Order Amending Prior Order (Dkt 510).  Because the Evanston Defendants failed to show that the FAAC negated all facts creating a potential for coverage, the Evanston Defendants *continue* to owe a duty to defend the underlying action until the action "is concluded."  *See Buss*, 16 Cal. 4th at 46 (explaining that the duty to defend is not extinguished until either the underlying litigation ends or the insurer negates all facts suggesting potential coverage).

#### b.  Because the Underlying Litigation Has Not Yet Ended, the Evanston Defendants' Duty to Defend Has Not Yet Ended

Because the Evanston Defendants owe a duty to defend and the underlying litigation is on appeal to the Ninth Circuit, the Evanston Defendants' duty to defend has not yet ended.  *See Arenson v. National Auto. & Casualty Ins. Co.*, 48 Cal. 2d 528, 537 (1957) (holding that an insurer's duty to defend its insured includes a duty to pay fees and costs on appeal); *Aerojet*, 17

Cal. 4th at 61 (describing "the temporal limits of the insurer's duty to defend" as "between tender of the defense and conclusion of the action").

### c. The Evanston Defendants Cite  No Authority to Support Their Position that An Insurer Can Reduce Its Liability Under the Duty to Defend By the Amount of Fees and Costs Incurred for Claims Not Covered By the Policy

The Evanston Defendants, perhaps anticipating that this Court would hold that they continue to owe a duty to defend, have filed the Certain Costs Motion urging this Court to reduce their liability under this duty to defend by certain fees and costs incurred for work not covered by the policy.  *See, e.g.*, Certain Costs Mot. (Sealed Dkt. 358) at 10:13-15 (arguing there "is no coverage for [certain] claims" and therefore liability should be "reduced by the amount of such claims"), 20-21 (arguing that "MGA may not recover from Evanston" certain fees and costs).  The Evanston Defendants' Certain Costs Motion cites only 10 cases, very few of which address an insurer's right to reduce its liability where a duty to defend exists; the three cases that address the issue do so by explaining an insurer's right to *reimbursement* for fees and costs incurred for work not potentially covered by the policy.[7]  The Reply cites 6 more cases, none of which support the Evanston Defendants' position and all of which are inapposite.[8]

_____

[7] The cited cases addressing an insurer's reimbursement right are: (1) *Buss v. Superior Court*, 16 Cal. 4th 35 (1997), which is discussed extensively in this Order; (2) *Hogan v. Midland Nat'l Ins. Co.*, 3 Cal. 3d 553 (1970), which explains that, contrary to the Evanston Defendants' contention, an "insurer is liable for the total amount of the fees despite the fact that some of the damages recovered in the action against the insured were outside the coverage of the policy" (*id.* at 564); and (3) *Securimetrics, Inc. v. Hartford Cas. Ins. Co.*, 2005 U.S. Dist. LEXIS 43533, *8 (N.D. Cal. Oct. 4, 2005), which denied an insured's motion to dismiss an insurer's claim seeking a "ruling on the right to reimbursement" because the issue was ripe, even if the insurer had not yet paid the amount it owed its insured under the duty to defend.

[8] For example, the Evanston Defendants inexplicably rely on cases, such as *Ringler Associates Inc. v. Maryland Casualty Co.*, 80 Cal. App. 4th 1165 (2000), which hold that no *duty to defend*

As discussed in Section III, the California Supreme Court has made it abundantly clear that an insurer that owes a duty to defend has an implied-in-law duty to defend the "entire" underlying suit—including claims that are not even potentially covered. *Buss v. Superior Court*, 16 Cal. 4th 35, 49 (1997); *Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th 38, 60 (1997). The "defense costs" an insurer owes under the duty to defend "are not limited by the policy, expressly or otherwise," because the duty is one implied in law. *Aerojet*, 17 Cal. 4th at 62 n.13 (1997); *Buss*, 16 Cal. 4th at 49 ("as to the claims that are not [potentially covered], the insurer may give, and the insured may get, more than they agreed").

The Evanston Defendants argument to reduce their liability to *only* those fees and costs incurred for claims that are at least potentially covered is an impermissible end-run around the express holdings of the California Supreme Court. *See Buss*, 16 Cal. 4th at 59 n. 23 (explaining that the duty to defend is not "an obligation merely to *pay* defense costs *only* as to the claims that are at least potentially covered" but instead requires the insurer "to mount and fund a defense" and "to defend entirely . . . both the claims that are at least potentially covered and also those that are not"). The Evanston Defendants cite no case after *Buss*, and the Court has found none, in which an insurer can reduce its fees and costs to only those costs incurred for work that is potentially covered. The Court identified the Evanston Defendants' oversight in its tentative ruling and provided the Evanston Defendants with the opportunity to address this error in several hours of oral argument on two separate days.[9] Yet, as the Court noted in the second oral argument, the Evanston Defendants did not direct this Court to any authority supporting their

---

*exists*. Given that the Court has twice held that a duty to defend *does exist*, these cases have no bearing on the scope of the Evanston Defendants' liability under that duty.

[9] For example, at the January 24, 2012, hearing, the Court asked "Can Defendants cite any case in which a court has permitted an insurer, before its duty to defend has ended, to reduce its liability to exclude costs of defending the underlying litigation that are not potentially covered?" In addition, the Court noted that, on pages 36-37 of the tentative ruling, the Court had stated that no such case is found in the Evanston Defendants' briefs.

position and instead responded by simply recounting various misdeeds allegedly perpetrated by the MGA Plaintiffs against third parties during the prior litigation.

It is the Evanston Defendants' burden, as the movant on this summary judgment motion, to show that they are entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  The Evanston Defendants do not meet this burden because they neither cite nor discuss the controlling law.

Accordingly, the Court DENIES the Certain Costs Motion to the extent it seeks to reduce the Evanston Defendants' liability by the amount of fees and costs incurred for work that is not potentially covered by the policy.  Specifically, the Court DENIES the Certain Costs Motion because it seeks to reduce the Evanston Defendants' liability for fees and costs incurred by the MGA Plaintiffs in the underlying litigation for: (1) litigating affirmative counterclaims-in-reply; (2) defending Mattel's copyright infringement claim; (3) representing non-insured parties; (4) representing an MGA Employee purportedly in a different, untendered lawsuit; and (5) analyzing conflicts of interest for MGA's prospective counsel.

### d.  The Evanston Defendants Cite No Authority and Make No Argument that the Costs MGA Incurred Were Not Defense Costs, that Is, that They Were Not Reasonable and Necessary to Limit MGA's Liability

As discussed in Section III, the California Supreme Court in *Aerojet* announced a rule by which to determine if an insured's fees and costs constituted "defense costs" that an insurer "must incur" under the duty to defend.  *See Aerojet*, 17 Cal. 4th at 60-61.  *Aerojet* holds that fees and costs are *not* defense costs incurred under the duty to defend if they are either: (1) incurred for work that is *not* "conducted within the temporal limits of the insurer's duty to defend"; (2) incurred for work that is *not* "reasonable and necessary . . . to avoid or at least minimize liability"; or (3) for an amount that is *not* "reasonable and necessary" to minimize liability.  *See id.* at 61.

The Evanston Defendants do not dispute that the MGA Plaintiffs have shown the "existence and amount of" their expenses; indeed, Evanston Defendants could not dispute that the MGA Plaintiffs have provided information about the existence and amount of expenses

because the Evanston Defendants' argument is based on the information the MGA Plaintiffs provided. *See Aerojet*, 17 Cal. 4th at 64. Because the MGA Plaintiffs have shown the "existence and amount of" their expenses, these expenses are "presumed to be reasonable and necessary as defense costs." *Aerojet*, 17 Cal. 4th at 64. Thus, the Evanston Defendants, as the "insurer . . . must carry the burden of proof that they are in fact unreasonable or unnecessary." *Id.*

The Evanston Defendants' briefs do not mention *Aerojet* or any cases applying its rule. The Court identified the Evanston Defendants' oversight in its tentative ruling and provided the Evanston Defendants with the opportunity to address this error in several hours of oral argument on two separate days.[10] Yet, as the Court noted in the second oral argument on January 25, 2012, the Evanston Defendants did not direct this Court to any authority supporting their position and instead, as with the Court's questions about the impact of *Buss*, the Evanston Defendants responded by criticizing the MGA Plaintiffs' behavior in the prior litigation.

It is the Evanston Defendants' burden, as the movant on this summary judgment motion, to show that they are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The Evanston Defendants do not meet this burden because they neither cite nor discuss the controlling law.

Because the Evanston Defendants cite no controlling California Supreme Court law, much less provide the applicable analysis, the Court DENIES the Certain Costs Motion. Specifically, the Court DENIES the Certain Costs Motion regarding fees and costs incurred by the MGA Plaintiffs in the underlying litigation for: (1) litigating affirmative counterclaims-in-reply; (2) defending Mattel's copyright infringement claim; (3) representing non-insured parties;

---

[10] For example, at the January 24, 2012, hearing, the Court explained that the Evanston Defendants "clearly believe [they] are entitled to reduce [their] costs now," but that even if this was true, "wouldn't the test to determine whether [these expenses] should be deducted from [the Evanston Defendants'] liability be the same one the Court applies," that is, the "*Aerojet* test."

(4) representing an MGA Employee purportedly in a different, untendered lawsuit; and (5) analyzing conflicts of interest for MGA's prospective counsel.

### e.  Because the Evanston Defendants' Duty to Defend Has Not Yet Ended, They Are Not Entitled to Reimbursement

As noted previously, an insurer becomes entitled to reimbursement from its insured only *after* the insurer's duty to defend *ends*.  *Buss*, 16 Cal. 4th at 59 n. 23; *Aerojet*, 17 Cal. 4th at 60. Where, as here, the trial court has found that a duty to defend exists, the insurer must pay for the *entire* action; the insurer can not reduce its liability to only those fees and costs incurred for claims that are potentially covered.  *See Buss*, 16 Cal. 4th at 59 n. 23 (explaining that the duty to defend requires the insurer "to mount and fund a defense" and "to defend entirely . . . both the claims that are at least potentially covered and also those that are not"); *Am. Motorists Ins. Co. v. Superior Court*, 68 Cal. App. 4th 864, 874 (1998).  Instead, the insurer must pay for the entire action and then, *after* its duty to defend has ended, obtain those fees and costs in the form of a reimbursement.  *See Buss*, 16 Cal. 4th at 59 n. 23; *Aerojet*, 17 Cal. 4th at 60.

Because the Evanston Defendants' duty to defend has not yet ended, the Evanston Defendants can not obtain reimbursement.

### f.  However, the Court Will Provide the Evanston Defendants With Declaratory Relief Regarding the Extent of Their Liability to the MGA Plaintiffs and Their Rights to Reimbursement and Offset

Where, as here, the trial court has found that a duty to defend exists, the insurer "must pay as ordered and all issues concerning the [insurer's] right to reimbursement of all or some part of the fees and costs thus paid are deferred until such time as that issue is ripe." *Am. Motorists Ins. Co. v. Superior Court*, 68 Cal. App. 4th 864, 874 (1998).  The Court requested additional briefing on whether this issue was ripe given that the Evanston Defendants seek an offset based on a fee award that is on appeal.

The Court concludes that, although, the Evanston Defendants must pay for the entire action *now* and are entitled to reimbursement only *after* their duty to defend ends, they may nonetheless seek a declaration of the scope of their liability and their right to reimbursement or

offset.  California courts have issued declarations of an insurer's rights and liability in relation to its insured.  *See* 2 Witkin Sum. Cal. Law Insurance § 273 ("Stay is not warranted where coverage issue is one of law."); *Securimetrics, Inc. v. Hartford Cas. Ins. Co*., 2005 U.S. Dist. LEXIS 43533, *8 (N.D. Cal. Oct. 4, 2005) (denying an insured's motion to dismiss an insurer's claim for declaratory relief "on the right to reimbursement" because the issue was ripe).

Thus, the Court will provide declarations regarding the remaining issues presented in these two motions because these remaining issues do not require this Court to issue holdings contrary to *Buss* and *Aerojet*:

- Whether the measurement of the fees and costs that the Evanston Defendants owe the MGA Plaintiffs is the amount MGA Plaintiffs' counsel *billed* or the smaller amount that the MGA Plaintiffs are *obligated to pay* their counsel after renegotiating their fees and costs (discussed in Section V of this Order);

- Whether the Evanston Defendants are entitled to reimbursement by the MGA Plaintiffs for certain fees and costs after the duty to defend ends because those costs are for claims *not* even potentially covered (discussed in Section VI of this Order); and

- Alternatively, if these certain costs *are* potentially covered, whether the Evanston Defendants' liability be can be offset after their duty to defend ends by the fees and costs that this Court awarded the MGA Plaintiffs in the underlying litigation (discussed in Section VII of this Order).

## V.     The MGA Plaintiffs Are Not Entitled to Recover Fees and Costs that Counsel Billed But Which the MGA Plaintiffs No Longer Owe

The Evanston Defendants seek a declaration that they are not liable for fees and costs that the MGA Plaintiffs' counsel billed but which the MGA Plaintiffs do not owe their counsel as a result of fee negotiations.

### i.  An Insured Is Only Entitled to Fees and Costs It Is Obligated to Pay Its Counsel, Not to the Larger Amounts Billed But Not Owed

Where an insurer's denial of its insured's defense is a breach of contract, "the proper measure of damages is the reasonable attorney's fees and costs incurred by the insured in defense of the claim." *Marie Y. v. General Star Indemnity Co.*, 2 Cal. Rptr. 3d 135, 159 (2003); see *also Arenson v. Nat'l Auto. & Cas. Ins. Co.*, 48 Cal.2d 528, 539 (1957); 39A Cal. Jur. – Insurance Contracts and Coverage § 555 ("The general measure of damages for a breach of the duty to defend an insured . . . are the costs and attorney's fees expended by the insured defending the underlying action."); 1-7 Appleman on Insurance § 7.06[a] ("Since breach of the duty to defend is a breach of contract, the usual measure of contract damages in the jurisdiction should apply. The starting point for damages for the failure to defend is the reasonable attorney's fees and expenses incurred by the policyholder to defend the third party claim.").

The Evanston Defendants first argue that they are only liable for the amount the MGA Plaintiffs *actually paid* its counsel as of today.  Their argument fails because it has been roundly rejected by the California Supreme Court.  *See Arenson*, 48 Cal. 2d at 539.

The parties next dispute whether, as a matter of law, the measure of the amount of attorneys fees "incurred" is: (1) the amount the insured's counsel *billed*, regardless of whether counsel later agreed to reduce the amount the insured would be obligated to pay; or (2) the *reduced* amount that the insured is *obligated to pay* as a result of the insured's later negotiation with its counsel.  The MGA Plaintiffs argue that the *billed* amount is the proper measure; the Evanston Defendants argue that *obligated to pay* amount is the proper measure.

This Court requested additional briefing because this issue appeared to be one of first impression in California.  While neither party will concede the novelty of this issue, the Court's suspicions have been confirmed by the lack of on-point authority provided by the parties.  The Court concludes that an insured is entitled only to the amounts that it is *obligated to pay* its counsel, not to the larger amounts originally billed.

### 1.  The Evanston Defendants' authority

The Evanston Defendants rely on two California Supreme Court cases that define the word "incur" outside the context of an insured seeking payment from an insurer, as well as a California Court of Appeals case that extends this definition to that context.

The most recent case, *Howell v. Hamilton Meats & Provisions*, did not involve a lawsuit between an insurer and its insured.  Instead, in *Howell*, the California Supreme Court held that a plaintiff, the victim of an automobile accident, could recover from her tortfeasor only the amounts of discounted medical bills to which her doctor was entitled under her insurance policy, not the larger amount that her doctor billed but which neither she nor her insurer were obligated to pay.  *Howell*, 52 Cal. 4th 541, 448 (2011).  Unlike the present case, the issue before the court was whether the plaintiff could recover the larger amounts billed under the "collateral source rule," which allows a plaintiff to recover amounts from a tortfeasor even if the plaintiff has received compensation for her injuries from a third party, often an insurer. *Id.* at 448. The Court reasoned that the plaintiff was not entitled to the billed amounts because the California statute at issue defined the measure of tort damages as "the amount which will compensate for all the detriment proximately caused." *See id.* at 551 (analyzing Cal. Civ. Code §§ 3281, 3282).

Similarly, *Trope v. Katz* did not involve a lawsuit between an insurer and its insured. Instead, the California Supreme Court held that an attorney who represented himself was not entitled to attorneys fees under a California statute that allowed a prevailing party to recover a discretionary award of attorney's fees "which are incurred."  11 Cal. 4th 274, 280 (1995).  The court used a dictionary to conclude that "incur" means to "to become obligated to pay" the fee. *See id.*  The court also held that the "ordinary meaning of the words 'attorney's fees['] . . . is the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation." *Id.*  The Court then concluded that an "attorney litigating in propria persona pays no such compensation" to himself and thus was not entitled to attorneys fees.

Finally, in *Richards v. Sequoia Insurance Company*, the court drew on *Trope v. Katz* to hold that the insurer was not required to pay its insured, who was an attorney, for work the insured did on his own case in the nine days before the insurer provided  counsel.  *See* 195 Cal. App. 4th 431, 437-38 (2011).  The court advanced two reasons.  First, the insurance policy expressly stated that "no insureds will, except at their own cost, voluntarily . . . incur any expense . . . without [the insurer's] consent," and the insured's work on his own case was such an expense.  *Id.* at 438.  Second, the court noted that *Trope v. Katz* defined "incur" to mean

"become obligated to pay," and so it "follows that an attorney litigating in propria persona cannot be said to 'incur' compensation for his time and his lost business opportunities.'" *Id.* However, the court also conceded that *Trope v. Katz* was "not dispositive." *Id.* at 436.

### 2.  The MGA Plaintiffs' authority

While the MGA Plaintiffs rely on only one case, this case involves similar facts and legal issues to the ones that are present here: an insured seeking from its insurer attorney's fees that the insured has not yet paid and does not anticipate paying.

In *Arenson v. National Auto. & Casualty Ins. Co.*, the California Supreme Court reversed a judgment for an insurer that reduced attorney's fees to the amounts the insured actually paid, even though the insured had not paid its attorney's fees in the underlying action and the insured's attorney testified that he doubted the insured would ever pay.  *See* 48 Cal. 2d 528, 538-39 (1957).  The court held that the insurer's liability for its breach of its duty to defend was the "amount of any obligation reasonably incurred by" the insured.  *Id.* at 539.  The court rejected the insurer's argument to "whittle down" the amount the insurer owed simply because the insured's attorney "filled the [insurer's] breach" by continuing to work despite receiving no payment.  *Id.*  The court reasoned that to hold otherwise would "encourage insurance companies to . . . disavow[] responsibility [for providing a defense] with everything to gain and nothing to lose."  *Id.*

### 3.  The Court's conclusion

The Court concludes that an insured is entitled only to the amounts the insured is *obligated to pay* its counsel, not to the amounts originally billed.  However, the Court does so without relying on the Evanston Defendants' arguments or authority.

The Court is wary about importing analysis of California statutes about tort damages and prevailing party fees into the present case, in which an insured seeks payment from its insurer under a common law theory of quasi-contract.  First, the California Supreme Court in *Arenson* expressly rejected the insurer's analogy to cases that did not involve an insured seeking to recover fees from an insurer.  *See* 48 Cal. 2d 528, 531, 537 (1957) ("[Insurer] has argued largely as though the action here were by an attorney to collect a fee.  But the action is not one by an

attorney against a client to collect a fee; neither does it involve a discretionary fee allowance by a judge . . . . This is quite another case.").  Furthermore, the Evanston Defendants do not explain why the statutory measure for tort damages or prevailing party discretionary fee awards should apply to the present case, in which the Court must measure an insurer's liability under a common law theory of quasi-contract.

However, the Court is also wary of reading *Arenson* as broadly as the MGA Plaintiffs urge.  In holding that the insured was entitled to recover unpaid fees from its insurer, the Court in *Arenson* noted that the insured did not "seek[] more than he reasonably expects to pay his attorney upon recoupment of that obligation from" the insurer.  *Arenson*, 48 Cal. 2d at 539. Here, in contrast, the MGA Plaintiffs do seek from the Evanston Defendants more fees and costs than they expect to pay their counsel.

While this statement in *Arenson* is dicta, it is consistent with the California Supreme Court rule that an insured's right to fees and costs that are not even potentially covered is a "quasi-contractual" right, not one based on the terms of the contract, and thus should result in the insured being unjustly enriched.  *Buss*, 16 Cal. 4th at 50-51.  If an insured is entitled to recover from its insurer *more* money than the insured is obligated to pay its counsel, the insured is unjustly enriched.

Thus, this Court holds that an insured is entitled only to the amounts the insured is *obligated to pay* its counsel, not to the larger amounts originally billed.

> ii.  **The Evanston Defendants only show that *some* of the fees and costs the MGA Plaintiffs seek are amounts which they are not obligated to pay counsel**

The Evanston Defendants seek a determination that the following are amounts the MGA Plaintiffs can not recover from the Evanston Defendants: (1) $9,456,008 in "discounts," which is allegedly the difference between the amount the MGA Plaintiffs are demanding from Evanston and the amount they have actually paid their counsel; (2) $13,263,529, which is allegedly the difference between the amount billed by Skadden and the amount the MGA Plaintiffs are

obligated to pay under a settlement with Skadden; and (3) at least $3.5 million that the MGA Plaintiffs are refusing to pay Orrick.

### 1. Discounts

As noted previously, the California Supreme Court has roundly rejected the argument by an insurer that its liability is limited to only the amounts an insured has actually paid. *See Arenson v. Nat'l Auto. & Cas. Ins. Co.*, 48 Cal.2d 528, 539 (1957). Thus, the Court DENIES the Evanston Defendants' motion to the extent they seek to reduce their liability by the $9,456,008 in "discounts" that the MGA Plaintiffs have not yet paid their counsel.

### 2. Skadden settlement

The parties agree that, as of August 31, 2011, the MGA Plaintiffs had an outstanding obligation to pay Skadden $24,263,529. *See* Pls. Statement of Genuine Issues (Sealed Dkt. 408) at 24-25. The Evanston Defendants contend that a November 11, 2008, settlement agreement between the MGA Plaintiffs and Skadden reduced that obligation to only $11 million, meaning that the MGA Plaintiffs no longer owe the additional $13,263,529.

The MGA Plaintiffs dispute that the settlement with Skadden accurately reflects their true obligation to Skadden. The MGA Plaintiffs cite the deposition of their General Counsel, in which she states that Skadden contends the $11 million amount in the settlement is void because MGA breached the settlement's terms. The MGA Plaintiffs have not identified what terms of the settlement agreement they have breached nor explained why the breach would increase their obligations to Skadden above $11 million.

The settlement agreement's terms do appear to limit the MGA Plaintiffs' obligations to Skadden to $11 million and the MGA Plaintiffs' lone hearsay statement does not successfully refute this conclusion. The settlement agreement states that the "aggregate amount of Skadden Fee and Expense Obligations required to be paid pursuant to this paragraph shall not exceed $11,000,000." *See* Khetan Decl. (Sealed Dkt. 359) Ex. 28 ("Skadden Settlement") at 2. The Court excludes from evidence the double-hearsay statement by the MGA Plaintiffs' general

counsel that Skadden has represented that the MGA Plaintiffs owe more than the $11 million.[11] Thus, the MGA Plaintiffs do not appear obligated to pay more than $11 million to Skadden at the present time.

Accordingly, the Court GRANTS the Evanston Defendants' motion to the extent it seeks to reduce the Evanston Defendants' liability for the Skadden fees and costs to only that amount which the MGA Plaintiffs are obligated to pay.  At the present time, that amount is $11 million. However, nothing in this Order precludes the MGA Plaintiffs from seeking additional funds from the Evanston Defendants in the future if the MGA Plaintiffs become obligated to pay Skadden *more* than $11 million for the work already completed in the underlying litigation.

### 3. $3.5 million that MGA Plaintiffs are allegedly refusing to pay Orrick

The parties agree that the MGA Plaintiffs are currently in a fee dispute with Orrick and that, as part of that dispute, the MGA Plaintiffs contend that they do not owe at least $3.5 million in fees and costs that Orrick billed.  *See* Pls. Statement of Genuine Issues (Sealed Dkt. 408) at 29.  However, evidence that the MGA Plaintiffs *dispute* their obligations to counsel and have not yet paid some amount is not evidence that the MGA Plaintiffs are actually not *obligated* to pay counsel.  Indeed, the California Supreme Court has expressly rejected the argument that an insurer's liability can be reduced by the amounts an insured has not yet paid its counsel.  *See Arenson*, 48 Cal. 2d at 538-39.

Thus, the Court DENIES the Evanston Defendants' motion to the extent it seeks a declaration that that the MGA Plaintiffs are not obligated to pay Orrick $3.5 million and thus can not recover this $3.5 million from the Evanston Defendants.

---

[11] Furthermore, even if the Court did not exclude this hearsay, the MGA Plaintiffs have offered no authority to explain why their obligation to Skadden—which would appear to be a purely legal question of contract interpretation—should be determined by considering extrinsic evidence rather than relying on the terms of the contract itself.

**VI.    The Evanston Defendants Have Not Shown that, After Their Duty to Defend Ends, They Are Entitled to A Declaration of a Right to Reimbursement of Certain Costs That Have No Potential For Coverage**

Next, the Court addresses whether the Evanston Defendants are entitled to reimbursement by the MGA Plaintiffs for certain costs *after* the Evanston Defendants have paid these costs and their duty to defend ends.

At oral argument, the Evanston Defendants insisted that they are entitled to reduce their liability *now* and that their argument should not be construed as one for reimbursement.  As the Court explained multiple times at the hearing and in this Order, the Evanston Defendants are simply wrong on the law; they are not entitled to reduce their liability now, but rather must seek reimbursement later.  Furthermore, the few cases cited by the Evanston Defendants that address whether an insurer that owes a duty to defend has a right to reduce its liability for fees and costs incurred for work not potentially covered by the policy analyze this right as a right to *reimbursement*.

Therefore, the Court charitably construed the Evanston Defendants' Certain Costs Motion as seeking a declaration as to their future right to reimbursement for claims not potentially covered.  Specifically, the Evanston Defendants seek to reduce their liability by fees and costs incurred by the MGA Plaintiffs in the underlying litigation for: (1) litigating affirmative counterclaims-in-reply; (2) defending Mattel's copyright infringement claim; (3) representing non-insured parties; (4) representing an MGA Employee purportedly in a different, untendered lawsuit; and (5) analyzing conflicts of interest for MGA's prospective counsel.  In addition, the Evanston Defendants seek a reduction in their liability due to alleged misdeeds by the MGA Plaintiffs against third parties.

This Court analyzes each of these categories of fees and costs for which the Evanston Defendants seek reimbursement using the following two-step process that synthesizes the relevant California Supreme Court cases.  The Evanston Defendants are entitled to reimbursement if they meet their burden to show that the disputed amount is both: (1) incurred for work on a claim that is not even potentially covered; and (2) allocated *solely* to that claim

and not to any potentially-covered claim.  Regarding the first prong, fees and costs are *not* even potentially covered if they are either: (1) incurred for work that is *not* "conducted within the temporal limits of the insurer's duty to defend"; (2) incurred for work that is *not* "reasonable and necessary . . . to avoid or at least minimize liability"; or (3) for an amount that is *not* "reasonable and necessary" to minimize liability.  *See Aerojet*, 17 Cal. 4th at 61.

Because the Evanston Defendants do not even cite the controlling California Supreme Court law, much less provide the applicable analysis, this Court DENIES the fees and costs sought in this part of the Certain Costs Motion.

### a.  Costs of Litigating MGA's Affirmative Counterclaims-In-Reply in the Underlying Suit

The Evanston Defendants seek to reduce their liability by $6,846,272 in fees and costs that the Evanston Defendants contend the MGA Plaintiffs incurred in litigating affirmative counterclaims-in-reply in the underlying suit.

### i.  Prosecution of the MGA's Plaintiffs' affirmative counterclaims-in-reply is an objective that is not even potentially covered

As discussed previously, *Aerojet* holds that fees and costs are *not* even potentially covered if they are either: (1) incurred for work that is *not* "conducted within the temporal limits of the insurer's duty to defend"; (2) incurred for work that is *not* "reasonable and necessary . . . to avoid or at least minimize liability"; or (3) for an amount that is *not* "reasonable and necessary" to minimize liability.  *See Aerojet*, 17 Cal. 4th at 61.  Although the Evanston Defendants do not address this case law, their arguments would appear to raise an issue only as to the second prong: whether the fees and costs were incurred for work that is *not* reasonable and necessary to minimize liability.

The MGA Plaintiffs argue that their affirmative counterclaims were reasonable and necessary to defending the underlying litigation because the presentation of *both* their affirmative counterclaims-in-reply *and* defenses allowed the MGA Plaintiffs to juxtapose Mattel's conduct with their own, resulting in a jury award largely in the MGA Plaintiffs' favor.  As evidence of the utility of this strategy, the MGA Plaintiffs highlight the vastly different trial

results between the first trial in July 2008 and the more recent trial in 2010.  In 2008, the MGA Plaintiffs' affirmative counterclaims were bifurcated and the MGA Plaintiffs were only permitted to *defend* Mattel's allegations—resulting in an award against the MGA Plaintiffs that was so expansive that the Ninth Circuit later reversed it.  In contrast, on remand in 2010 the MGA Plaintiffs' affirmative counterclaims-in-reply and defenses were tried together—resulting in jury award largely in the MGA Plaintiffs' favor.

Although the contrast between the two trials certainly demonstrates that prosecution of an insured's affirmative claims can be a very *reasonable* and cost-effective strategy to minimize liability, the Court is not convinced that it is a *necessary* one.  The MGA Plaintiffs have not cited any cases finding that such a strategy is *necessary*.  In addition, this Court has found only one case which addresses a similar argument, and that case does not appear to have relied on this argument to reach its conclusion.  *See KLA-Tencor Corp. v. Travelers Indem. Co.*, No. C-02-05641 RMW, 2004 U.S. Dist. LEXIS 15376 at *10, *23 (N.D. Cal. Aug. 4, 2004) (denying insurer's summary judgment motion where insured argued that insured's "ability to prevail" in its affirmative claims of patent infringement was "critical" to the defense of the potentially-covered disparagement claims in another suit, but appearing to base decision on insurer's failure to sufficiently allocate fees and costs).

The Evanston Defendants argue that, as a matter of law, prosecution of an insured's affirmative claims is an objective that is not even potentially covered.  They rely on *3250 Wilshire Boulevard Building*, in which the court upheld the dismissal of an insured's complaint against its insurer because the insured's affirmative claims in the underlying suit, which the insurer refused to defend, were not even potentially covered by the policy.  *See 3250 Wilshire Boulevard Bldg. v. Employers Ins. of Wausau*, 39 Cal. App. 4th 1277, 1279-80 (1995).  In the underlying suit, the insured sued a third party, who then counterclaimed against the insured.  *Id.* at 1279.  The insurer accepted the insured's tender of a defense to the *third party*'s counterclaims and paid for those costs, but refused to pay costs for prosecuting the *insured*'s claims against the third party.  *Id.* at 1279.  Examining a policy with a "duty to defend" clause identical to the one at issue here, the court concluded that the policy "did not obligate" the

insurers to prosecute the insured's claims against the third party, because such prosecution did not entail a "defense of a suit seeking damages." *Compare id.* at 1280 (analyzing insurance policy imposing on insurer a "duty to defend any 'suit' seeking" damages for an "advertising injury'") *with* Khetan Decl. (Dkt. 362) at 49 (Section I(B)(1)(b) – Coverage) (2001-02 Policy imposing on insurer a "duty to defend any 'suit' seeking" damages for an "advertising injury").

This Court finds *3250 Wilshire Boulevard Building* persuasive, if not well-reasoned, because it examined a policy with identical "duty to defend" language to the policy at issue here and can be harmonized with *Aerojet.* The Court was initially concerned that *3250 Wilshire Boulevard Building* cites no authority for its perfunctory conclusion and does not apply the *Aerojet* test to determine if an expense is not even potentially covered.[12] However, *3250 Wilshire Boulevard Building* does not appear inconsistent with the holding in *Aerojet* that work is not even potentially covered if the insurer can show that this work was *not* "reasonable and necessary . . . to avoid or at least minimize liability." *Aerojet*, 17 Cal. 4th at 61. Rather, *3250 Wilshire Boulevard Building* can be interpreted as concluding that prosecuting an insured's affirmative claims is not *necessary* to minimize the insured's liability.

The Court concludes that, as a matter of law, prosecution of the MGA Plaintiffs' *affirmative* counterclaims-in-reply in the underlying suit is an objective that is not even potentially covered by the 2001-02 Policy imposing a duty to *defend* suits seeking damages. However, this conclusion is only the first of two hoops through which the Evanston Defendants must jump in order to obtain reimbursement. Next, the Court considers whether the evidence shows that these fees and costs can be allocated *solely* to affirmative counterclaims-in-reply and not to any potentially-covered claim.

**ii. The Evanston Defendants are not entitled to reimbursement because they have not shown that the fees and costs incurred to litigate the insured's affirmative counterclaims-in-reply can be**

---

[12] The lack of *Aerojet* analysis is unsurprising given that *3250 Wilshire Boulevard Building* was decided two years before *Aerojet*.

**allocated *solely* to these claims and not to any potentially covered claim**

An insurer is not entitled to reimbursement where it fails to show that the fees and costs incurred for an insured's affirmative claims and defenses are separable and those fees and costs are allocated *solely* to the affirmative claims. *See California v. Pacific Indemnity Co.*, 63 Cal. App. 4th 1535, 1548-49 (1998); *KLA-Tencor Corp. v. Travelers Indem. Co.*, No. C-02-05641 RMW, 2004 U.S. Dist. LEXIS 15376 at *20 (N.D. Cal. Aug. 4, 2004) ("[T]o the extent that certain costs related to the [potentially-covered claims] cannot be separated from costs unrelated to those claims, [the insurer] bears the burden of showing which costs are in fact unreasonable or unnecessary."); *United Coastal Ins. Co. v. Strategic Organizational Systems Int'l, Inc.*, No. 90-16340, 1992 U.S. App. LEXIS 11621, *18 (9th Cir. May 13, 1992) (explaining that, where insurer had a duty to defend one lawsuit but not others and "[s]ome expenses . . . overlap between the three lawsuits," insurer was not prejudiced by paying for these overlapping costs because "the mere fortuity that the same defense measure proved of use in another lawsuit does not by itself relieve [insurer] of its duty to pay"); *see also Buss*, 16 Cal. 4th at 53 (holding that an insurer is not entitled to reimbursement of amounts that "can be allocated *jointly* to the claims that are at least potentially covered and to those that are not"); *Aerojet*, 17 Cal. 4th at 69 (holding that an insurer is entitled to reimbursement from the insured for the amounts that are "allocated *solely* to a part of a claim that is not even potentially covered"); *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal. 4th 643, 660 n.5 (2005) (same).

The Court is forced to rely on its own research for the rule stated above because neither of the parties cited relevant California case law.  The MGA Plaintiffs articulated the same *principle* when they argued that the fees and costs for prosecuting their affirmative counterclaims-in-reply are "inextricably intertwined" with those for their defense; however, the MGA Plaintiffs relied exclusively on out-of-state cases' interpretation of California law.[13]

---

[13] The MGA Plaintiffs do cite a California case which, although not factually similar, explains the policy behind the rule that an insurer is entitled to reimbursement only if the fees and costs

In *California v. Pacific Indemnity*,  the court upheld summary judgment for the insured that the insurer's liability included costs for work done on affirmative claims where the parties agreed that the "tasks involved in prosecuting [the affirmative claims] are inextricably linked to those involved in defending" the underlying suit.  63 Cal. App. 4th 1535, 1542-43, 1548-49 (1998).  In the underlying suit, the insured had sued a third party, the third party counterclaimed against the insured, and the insurer refused to defend the insured against the third party's counterclaims.  *Id.* at 1542.  The insured "provided testimony that the work was all related to the defense," while the insurer "provided no evidence to rebut that claim."  *Id.* at 1549.  The court concluded that, because "separating prosecution costs and defense costs in this action apparently is not possible," resolution turned on the "critical" question of which party bore the burden of proof.  *Id.* at 1548.  Concluding that the insurer bore the burden, the court upheld summary judgment for the insured.  *Id.* at 1549.

Similarly, in *KLA-Tencor*, the court denied the insurer's summary judgment motion because the insurer failed to show that the fees and costs incurred to defend against potentially-covered disparagement claims brought by a third party were separable from the insured's not-even-potentially covered affirmative claims of patent infringement in a different suit.  *See KLA-Tencor Corp. v. Travelers Indem. Co.*, No. C-02-05641 RMW, 2004 U.S. Dist. LEXIS 15376 at *10, *23 (N.D. Cal. Aug. 4, 2004).  The insured argued that its "ability to prevail" in its affirmative claims of patent infringement was "critical" to the defense of the potentially-covered disparagement claims in another action.  *Id.*  In addition, the insured argued that the two actions were "intertwined" because the "parties and technologies overlapped substantially."  *Id.*; *see United Coastal Ins. Co. v. Strategic Organizational Systems Int'l, Inc.*, No. 90-16340, 1992 U.S.

---

for an insured's affirmative claims and defenses are able to be separated.  *See Abdallah v. United Savings Bank*, 43 Cal. App. 4th 1101, 1111 (1996) (upholding award for fees incurred in litigating *all* claims because the work for these claims was "inextricably intertwined," making it "impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units").

App. LEXIS 11621, *18 (9th Cir. May 13, 1992) (explaining that, where insurer had a duty to

defend only one lawsuit but not others and "[s]ome expenses . . . overlap between the three

lawsuits," insurer was not prejudiced by paying for these overlapping costs because "the mere

fortuity that the same defense measure proved of use in another lawsuit does not by itself relieve

[insurer] of its duty to pay").

Like in *Pacific Indemnity* and *KLA-Tencor*, the insurer here—the Evanston Defendants—

have not demonstrated that the fees and costs incurred to defend against potentially-covered

claims brought in the underlying litigation are separable from the insured's not-even-potentially

covered affirmative claims. Nor have the Evanston Defendants shown that these fees and costs

are allocated *solely* to the affirmative claims. Indeed, the Evanston Defendants have made *no*

argument on this issue. The Evanston Defendants merely note that the parties agree that

$6,846,272 in fees and costs were incurred "to bring [MGA's] own affirmative claims against

Mattel." *See* Pls. Statement of Genuine Issues (Sealed Dkt. 408) at 18-19. The fact that some

fees and costs *can* be allocated to affirmative claims, which are not potentially covered, does not

satisfy the insurer's burden to show that these fees and costs are  "allocated *solely* to a part of a

claim that is not even potentially covered." *See Aerojet*, 17 Cal. 4th at 69; *see also Buss*, 16 Cal.

4th at 53 (holding that an insurer is not entitled to reimbursement of amounts that "can be

allocated *jointly* to the claims that are at least potentially covered and to those that are not").

None of the Evanston Defendants' cases apply the relevant *Aerojet* analysis or even

address the issue here: whether an insurer may seek reimbursement if it does not show that the

fees and costs for an insured's affirmative claims and defenses are able to be separated. As

discussed in the previous subsection, *3250 Wilshire Boulevard Building* stands only for the

general proposition that, in the abstract, the prosecution of an insured's affirmative claims is an

objective that is not even potentially covered; it says nothing about whether the fees and costs

incurred for affirmative claims and defenses were separable. *See 3250 Wilshire Boulevard Bldg.

v. Employers Ins. of Wausau*, 39 Cal. App. 4th 1277, 1279-80 (1995). The same is true of the

other two cases cited by the Evanston Defendants. In addition, these cases differ from the

present one both factually and in their procedural postures—for example, in these other cases

the burden is on the insured, whereas here it is on the insurer seeking reimbursement.  *See James 3 Corp. v. Truck Insurance Exchange*, 91 Cal. App. 4th 1093, 1105-06 (2001) (upholding summary judgment favoring insurer because insurer's refusal to fund the insured's affirmative counterclaims did not create a conflict between the insurer and insured sufficient to warrant appointment of independent counsel, reasoning that "nothing in the policy . . . obligates [the insurer] to fund and prosecute an insured's affirmative relief counterclaims"); *Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th 1078, 1095-96 (2005) (upholding judgment that insured had neither pled nor proved that its insurer owed fees incurred for filing the insured's cross-complaint because the insured provided no "citable legal authority" and insurance "policies generally do not impose an obligation to pursue claims for affirmative relief against third parties").

In sum, despite the Evanston Defendants' obfuscation, the law is clear that an insurer is not entitled to reimbursement for fees and costs incurred in litigating an insured's affirmative claims unless the insurer shows that these fees and costs can be separated from those incurred in defending against potentially-covered claims.  Because the Evanston Defendants have not shown that the fees and costs incurred to litigate the MGA Plaintiffs' affirmative counterclaims-in-reply can be allocated solely to these claims and not to other, potentially-covered claims, the Evanston Defendants are not entitled to reimbursement.

### iii.   Fees For Work Done Before Tender

As noted above, an insurer seeking reimbursement can meet its burden if it shows that the disputed fees or costs were for an activity conducted *before* the duty to defend began, that is, before the insured tendered a defense.  *See Aerojet*, 17 Cal. 4th at 61 (describing "the temporal limits of the insurer's duty to defend" as "between tender of the defense and conclusion of the action").

The parties agree that the MGA Plaintiffs are not entitled to seek from the Evanston Defendants the part of the fees for affirmative counterclaims-in-reply that are attributable to

work done before the MGA Plaintiffs tendered their defense.[14]  *See* Opp'n (Dkt. 407) at 6; Reply (Dkt. 447) at 3.  Specifically, the MGA Plaintiffs state that $4,588,113 in fees and $77,486 in costs are attributable to such pre-tender work.  *See* Opp'n (Dkt. 407) at 6.  Thus, the MGA Plaintiffs have waived their right to recover $4,588,113 in fees and $77,486 in costs from the Evanston Defendants for pre-tender work.

However, the MGA Plaintiffs have not conceded that the $766,948 incurred to transition from O'Melveny & Myers to Skadden was incurred for work done before tender.  *See* Pls. Statement of Genuine Issues (Sealed Dkt. 408) at 27.  Because the only document cited by the Evanston Defendants is silent about when this transition occurred, the Evanston Defendants have not met their burden to show that this $766,948 was incurred for pre-tender work.  *See* Khetan Decl. (Sealed Dkt. 359) Ex. 30 ("Walker Report") at 21.

Accordingly, the Court GRANTS the Evanston Defendants' Certain Costs Motion to the extent it seeks to reduce their liability by $4,588,113 in fees and $77,486 in costs attributable to pre-tender work.

### iv.  Conclusion

In sum, the Court concludes that, as a matter of law, the prosecution of the MGA's Plaintiffs' affirmative counterclaims-in-reply in the underlying litigation was not an objective that was even potentially covered by the policy.  However, the Evanston Defendants have not shown that the disputed fees and costs can be allocated *solely* to this objective.  Thus, the Court DENIES the Evanston Defendants' Certain Costs Motion to the extent it seeks a declaration that they are entitled to a reimbursement of $6,846,272 in fees and costs incurred to litigate the MGA's Plaintiffs' affirmative counterclaims-in-reply in the underlying litigation.

However, the Court GRANTS the Certain Costs Motion to the extent it seeks to reduce the Evanston Defendants' liability by $4,588,113 in fees and $77,486 in costs attributable to pre-tender work.

---

[14] These pre-tender fees are identified as "matter 8" in the bills from O'Melveny & Myers to the MGA Plaintiffs.  Opp'n (Dkt. 407) at 6.

### b.  Costs of Defending Mattel's Copyright Infringement Claim

The Evanston Defendants appear to contend that all the fees and costs that the MGA Plaintiffs incurred in defending against Mattel's copyright infringement claim in the underlying action fall into an exception in the 2001-02 Policy for offenses that are "related to" copyright infringement.  The Evanston Defendants are not clear on the amount and source of these fees and costs.  At one point the Evanston Defendants state that these costs are the $162 million that the MGA Plaintiffs *sought* to recover from Mattel in the underlying action under the Copyright Act, 17 U.S.C. § 505.  At another point the Evanston Defendants describe the fees and costs as the $137 million that this Court ultimately awarded under the Copyright Act.

### i.  The Court assumes but does not decide that a defense of Mattel's copyright infringement claim is not even potentially covered

The Court assumes, without deciding, that the disputed fees and costs for defending Mattel's copyright infringement claim are not even potentially covered.  The Court does so because the Evanston Defendants make no substantive argument, cite no case law on this point, provide no page citation to the policy language, and their right to reimbursement can be easily resolved in the second step of the analysis.

### ii.  The Evanston Defendants are not entitled to reimbursement because they have not shown that the disputed fees and costs can be allocated *solely* to a copyright infringement claim that is not even potentially covered and not to a potentially-covered claim

The Evanston Defendants have failed to meet their burden of showing that the disputed costs are allocated *solely* to claims that are not even potentially covered, that is, solely to claims related to copyright infringement.  The Evanston Defendants' sole evidence of allocation is that, for purposes of determining whether the MGA Plaintiffs were prevailing parties under the Copyright Act, 17 U.S.C. § 505, this Court and the MGA Plaintiffs have previously described varying percentages of the disputed fees and costs as being incurred to defend against Mattel's copyright infringement claim.  In the underlying action, this Court awarded $105,688,073 in

fees and $31,677,104 in costs to the MGA Plaintiffs under the Copyright Act.  *See* Order (04-9049 Dkt. 10703) at 1-2.

First, the Evanston Defendants cite no case nor make any argument to explain why the analysis conducted by this Court and the MGA Plaintiffs regarding the Copyright Act can substitute for the *Aerojet* analysis that is required here.  The former analysis determines whether a defendant should be awarded fees and costs under a *federal statute* because the defense furthered the purposes of that *statute*.  *See* Order (04-9049 Dkt. 10703) at 7-13, 15-16.  The latter determines whether an insurer should be reimbursed under a theory of *restitution* because the fees and costs are not potentially covered by the terms of an insurance *policy*.  *See Buss*, 16 Cal. 4th at 50-51.

Second, the Evanston Defendants' argument fails because, even assuming that this Court's and the MGA Plaintiffs' prior statements show that the disputed fees and costs are attributable to a claim that is not even potentially covered, these statements do not show that these costs are *solely* attributable to that claim.  The allegations in the underlying complaint that are potentially covered—allegations that satisfied the 2001-02 Policy's definitions of product disparagement and advertising injury—were mixed in with allegations of copyright infringement.  Indeed, the underlying complaint suggests that the factual predicates for both the potentially-covered claims and the copyright infringement claims may overlap.  Given this overlap, it is the Evanston Defendants' "extremely difficult" burden to show that the costs they seek are allocated *solely* to defending copyright infringement claims, and not to the potentially-covered claims of product disparagement and advertising injury.  *See Buss*, 16 Cal. 4th at 57-58. At best, the Evanston Defendants' slim evidence suggests that the costs they seek *can* be allocated to defense of a copyright infringement claim; it says nothing about whether these costs are *solely* allocated to defending this copyright infringement claim.  *See id.* at 53 (an insurer is not entitled to reimbursement of costs that "can be allocated jointly to the claims that are at least potentially covered and to those that are not"); *see also Barratt*, 102 Cal. App. 4th 860 (an insured may recover costs from its insurer "even if the insured obtains additional benefits from" these costs, and even if the costs "serve[d] more than one objective").

### iii.  Conclusion

In sum, the Court concludes that the Evanston Defendants have not shown that the disputed fees and costs can be allocated *solely* to a claim that is not even potentially covered. Thus, the Court DENIES the Evanston Defendants' Certain Costs Motion to the extent it seeks a declaration that they are entitled to a reimbursement of either $137 million or $162 million in fees and costs that MGA Plaintiffs incurred in defending against Mattel's copyright infringement claim in the underlying action.

### c.  Costs of Representing Non-Insured Parties

The Evanston Defendants seek to reduce their liability by fees and costs that the Evanston Defendants contend the MGA Plaintiffs incurred in the underlying suit to defend or represent people and entities that are not "insureds," as defined by the 2001-02 Policy.  Specifically, the Evanston Defendants seek: (1) $4,158,528 incurred for defending Carter Bryant, a former employee of Mattel who developed the idea for the Bratz brand over which Mattel alleged ownership; (2) $1,301,901 incurred for defending Gustavo Machado, an MGA employee; (3) $1,693,223.74 incurred for representing witnesses; and (4) $6,461,860 incurred for defending OMNI 808.

### i.  Fees and costs incurred for defending people who are not "insureds" as defined by the policy are not, as a matter of law, amounts for which there is no potential coverage

As discussed previously, *Aerojet* holds that fees and costs are not even potentially covered if they are either: (1) incurred for work that is *not* "conducted within the temporal limits of the insurer's duty to defend"; (2) incurred for work that is *not* "reasonable and necessary . . . to avoid or at least minimize liability"; or (3) for an amount that is *not* "reasonable and necessary" to minimize liability.  *See Aerojet*, 17 Cal. 4th at 61.  Although the Evanston Defendants do not address this case law, their arguments would appear to raise an issue only as to the second prong: whether the fees and costs were incurred for work that is *not* reasonable and necessary to minimize liability.

The Evanston Defendants contend that, as a matter of law, they are entitled to reimbursement of fees and costs incurred to defend or represent people who are not the "insured" because such representation is work for which there is no potential coverage.  The 2001-02 Policy limits coverage to a person or entity who is the "insured," a definition that includes MGA's "employees . . . for acts within the scope of their employment by [MGA] or while performing duties related to the conduct of your business."  *See* Pls. Statement of Genuine Issues (Sealed Dkt. 408) at 17.

In *Barratt American, Inc.*, the court rejected a similar insurer's argument that the court should adopt a per se rule—namely, that an insured could not seek costs that "benefited a third party" who was neither the insured nor the party suing the insured—because it was possible that the costs served "more than one objective."  *See Barratt American, Inc. v. Transcontinental Ins. Co.*, 102 Cal. App. 4th 848, 859-61 (2002).  The court applied the *Aerojet* test to conclude that such costs were "not barred as a matter of law" because it was *possible* that the costs both: (1) benefitted the third party, which would not be a potentially covered cost; and (2) were reasonable and necessary to minimize the insured's liability, which would be a potentially covered cost.  *Id.* at 861.  The court emphasized that *who* benefited from the costs was not the "critical issue" and thus not a sufficient basis to bar the insured's recovery from the insurer; rather, under the *Aerojet* test, the question is only whether the costs are reasonable and necessary to minimize the insured's liability.  *Id.*

None of the three cases cited by the Evanston Defendants persuade this Court to ignore *Barratt American, Inc.*, or the *Aerojet* test and instead adopt a per se rule.  In fact, none of these cases cited by the Evanston Defendants even mention the *Aerojet* test, and one was decided before *Aerojet*.  *See Alex Robertson Co. v. Imperial Casualty & Indemnity Co.*, 8 Cal. App. 4th 338 (1992).  The Evanston Defendants' cases involve neither the facts nor law at issue here.  The legal issue here is whether an insurer is entitled to reimbursement under a theory of *restitution* because the disputed fees and costs were not reasonable and necessary to limit the insured's liability.  As the California Supreme Court has explained, this issue is not merely one of contract interpretation, because both an insurer's duty to defend and its corresponding right to

reimbursement are not based on contract, but rather on quasi-contractual theories.  *See Aerojet*, 17 Cal. 4th at 69; *Buss*, 16 Cal. 4th at 49, 60-61.  The cases cited by the Evanston Defendants merely apply contract analysis, with no discussion of an insurer's right to reimbursement.  These cases analyze various insurance policies—some of which differ greatly from the 2001-02 Policy—to hold that certain parties do not qualify as an "insured" under these policies.  *See Alex Robertson Co.*, 8 Cal. App. 4th at 343-44 (rejecting general contractor's argument that *insured*'s promise to indemnify general contractor expanded the insurance policy's definition of "insured" and holding that insurer owed no duty to defend a general contractor); *Boeing Co. v. Continental Casualty Co.*, 157 Cal. App. 4th 1258, 1265-66 (2007) (rejecting company's argument that it had the power to unilaterally expand the insurance policy's definition of "insured" because the policy in fact limited that power to only the named insured); *Endurance Am. Specialty Ins. Co. v. Lance-Kashian & Co.*, NO. CV F 10-1284 LJO DLB, 2010 U.S. Dist. LEXIS 100467 at *27, *30-31 (E.D. Cal. Sept. 13, 2010) (rejecting insured's argument that insurance policy's provision was unenforceable as against public policy where policy stated that, if the underlying litigation was against both the insured "and others not insured under this Policy," the insured and insurer would "agree [to] an allocation between insured and uninsured [l]oss").

In sum, this Court follows *Barratt American, Inc.*, to reject the Evanston Defendants' per se rule that an insurer is entitled to reimbursement of fees and costs incurred to defend or represent people who are not the "insured."[15]  As the court noted in *Barratt American, Inc.*, such a per se rule is inconsistent with the *Aerojet* test.  The Evanston Defendants have provided no case law to show otherwise.

---

[15] As with several other arguments in the Certain Costs Motion, neither party provided this Court with relevant case law.  While there appears to be very little California case law on point, the Court finds *Barratt American, Inc.*, the most apposite.  Interestingly, the MGA Plaintiffs, as the insured, have an even more persuasive legal position than the insured in *Barratt American, Inc.*, because here the insurer bears the burden to show that the disputed amounts were not reasonable and necessary, whereas the burden was borne by the insured in *Barratt American, Inc.*

### ii.  The Court does not address whether these costs can be allocated *solely* to claims that are not even potentially covered

Because the Evanston Defendants have not shown that the disputed fees and costs were, in fact, for a claim that is not even potentially covered, the Court does not reach the issue of whether the disputed amounts are allocated *solely* to claims that are not even potentially covered.

### iii.  Fees For OMNI 808

The Evanston Defendants seek to reduce their liability by $6,461,860 in fees and costs incurred for defending OMNI 808.  *See* Mem. (Sealed Dkt. 358) at 12.  The MGA Plaintiffs do not dispute the accuracy of this number.  *See* Pls. Statement of Genuine Issues (Sealed Dkt. 408) at 20.  Instead, they state that they are not seeking from the Evanston Defendants "any fees related to OMNI 808."  *See* Opp'n (Dkt. 407) at 9.  Thus, the MGA Plaintiffs have waived their right to recover such fees from the Evanston Defendants.

Accordingly, the Court GRANTS the Evanston Defendants' Certain Costs Motion to the extent it seeks to reduce their liability by $6,461,860 in fees and costs incurred for defending OMNI 808.

### iv.  Conclusion

In sum, the Court concludes that the Evanston Defendants have not shown that the disputed fees and costs were for a claim that was not even potentially covered.  Thus, the Court DENIES the Evanston Defendants' Certain Costs Motion seeking a declaration that they are entitled to a reimbursement for fees and costs that the MGA Plaintiffs incurred in the underlying suit to defend or represent people and entities who are not "insureds," as defined by the 2001-02 Policy.  Specifically, the Court DENIES the reimbursement for fees and costs of: (1) $4,158,528 incurred for defending Carter Bryant; (2) $1,301,901 incurred for defending Gustavo Machado; and (3) $1,693,223.74 incurred for representing witnesses.  However, the Court GRANTS the Evanston Defendants' Certain Costs Motion to the extent it seeks to reduce their liability by $6,461,860 in fees and costs incurred for defending OMNI 808.

### d. Costs of Representing An MGA Employee Purportedly In A Different, Untendered Lawsuit

The Evanston Defendants seek to reduce their liability by $38,866.19 in fees and costs that the Evanston Defendants contend the MGA Plaintiffs incurred to defend a different suit that was never tendered.

### i. The Evanston Defendants' sole fact does not show that these fees and costs are for claims that have no potential coverage

An insurer seeking reimbursement can meet its burden if it shows that the disputed fees or costs were for an activity conducted *before* the duty to defend began, that is, before the insured tendered a defense. *See Aerojet*, 17 Cal. 4th at 61 (describing "the temporal limits of the insurer's duty to defend" as "between tender of the defense and conclusion of the action").

The Evanston Defendants' sole fact to support their contention that these fees and costs were for a different, untendered litigation is that the MGA Plaintiffs admit that the attorney, Lenczner Slaght, who billed these fees and costs "did not represent MGA or Larian in the [underlying litigation]." *See* Mem. (Sealed Dkt. 358) 14:28-15:1; *See* Pls. Statement of Genuine Issues (Sealed Dkt. 408) at 10-11. Strangely, the Evanston Defendants provide no other evidence to support their contention, such as a case name or number.

The Court concludes that the fact that an attorney "did not represent *MGA* or *Larian* in the [underlying litigation]" does not show that the attorney in fact worked on a completely unrelated, untendered litigation; the attorney may simply have represented an employee of MGA *other than* Larian. Indeed, the MGA Plaintiffs contend that these fees are for the defense of Janine Brisbois, an MGA employee who was the subject of several allegations in the FAAC filed in the underlying litigation. *See* Opp'n (Sealed Dkt. 407) at 12; Req. Judicial Notice (Dkt. 363) Ex. 2 (FAAC) at ¶¶ 59, 61, 85. Given that the Evanston Defendants have admitted in the Certain Costs Motion that the 2001-02 Policy covers MGA's "employees," Janine Brisbois would appear to be covered. *See* Pls. Statement of Genuine Issues (Sealed Dkt. 408) at 17.

Thus, the Evanston Defendants have not met their burden to show that these fees and costs are for a claim that is not even potentially covered.

### ii.  Whether these costs can be allocated *solely* to claims that are not even potentially covered

Because the Evanston Defendants have not shown that the disputed fees and costs were, in fact, for a claim that is not even potentially covered, the Court does not reach the next issue of whether the disputed amounts are allocated *solely* to claims that are not even potentially covered.

### iii.  Conclusion

In sum, the Court concludes that the Evanston Defendants have not shown that the $38,866.19 in fees and costs were for a claim that was not even potentially covered.  Thus, the Court DENIES the Evanston Defendants' Certain Costs Motion seeking a declaration that they are entitled to a reimbursement for $38,866.19 in fees and costs billed by Lenczner Slaght.

### e.  Costs of Analyzing Conflicts of Interest for MGA's Prospective Counsel

The Evanston Defendants seek reimbursement for $13,336.23 in fees and costs that the Evanston Defendants contend the MGA Plaintiffs incurred to analyze conflicts of interest for prospective counsel in the underlying litigation.[16]

### i.  Fees and costs incurred to analyze conflicts of interest for prospective counsel are not, as a matter of law, claims that have no potential coverage

The Evanston Defendants contend that, as a matter of law, fees and costs incurred to analyze conflicts of interest for prospective counsel in the underlying litigation are not fees and

---

[16] The Court does not credit the Evanston Defendants' alternative characterization of these fees and costs as incurred to resolve a fee dispute with the MGA Plaintiffs' former law firm O'Melveny & Myers.  The Evanston Defendants make this argument only in their Reply and provide no evidence to support this characterization.  *See* Reply (Sealed Dkt. 455) at 11.  Furthermore, the MGA Plaintiffs would likely be entitled to these costs as damages for breach of contract, because an insured may recover the reasonable costs of mitigation.  *See Howard v. American Nat'l Fire Ins. Co.*, 187 Cal.App.4th 498, 533 (2010).

costs for claims that are potentially covered.  As with their other arguments in this motion, the Evanston Defendants cite no authority and do not address the *Aerojet* test.  However, their arguments would appear to raise an issue only as to whether the fees and costs were incurred for work that is *not* reasonable and necessary to minimize liability.  *See Aerojet*, 17 Cal. 4th at 61.

Every case that this Court has found runs contrary to the Evanston Defendants' proposed per se rule and the Court identifies no policy reason to punish an insured that changes firms during the underlying litigation.  Indeed, the law and the equities tilt in favor of allowing an insured to change firms if doing so will minimize its liability.  For example, California courts have held that an insurer that refuses to defend its insured can "not insist that [the insured] use the . . . firm" chosen by the insurer.  *Stalberg v. Western Title Ins. Co.*, 230 Cal. App. 3d 1223, 1233 (1991).  Furthermore, the California Supreme Court and other courts applying California law have repeatedly held that an insurer's breach of its duty to defend causes the insurer to "forfeit[] its right to participate in or control the [insured's] defense."  *See California v. Pacific Indem. Co.*, 63 Cal. App. 4th 1535, 1544, 1554 (1998); *Arenson v. National Auto. & Casualty Ins. Co.*, 48 Cal. 2d 528, 538-39 (1957) (reversing denial of attorneys fees to insured because insurer, if it had not wrongfully denied a defense, "could have prevented . . . the extensive litigation in which [the insured] engaged" and thus the insurer properly bore "the risk of the uncertainty which his own wrong has created"); *Concept Enters. v. Hartford Ins. Co.*, NO. CV 00-7267 NM (JWJx), 2001 U.S. Dist. LEXIS 6901 at *10-11 (C.D. Cal. May 21, 2001); *Foxfire, Inc. v. New Hampshire Ins. Co.*, Nos. C-91-2940 MHP ARB and C-91-4364 MHP 1994 U.S. Dist. LEXIS 9249, 1994 WL 361815 at *3 (N.D. Cal. July 1, 1994) (holding that an insurer that breached its duty to defend "cannot now insist that [the insured] should have paid defense counsel only what [the insurer] itself would have paid its counsel" because such costs are "the foreseeable consequences of failing to defend").

In sum, this Court rejects the Evanston Defendants' per se rule that an insurer is entitled to reimbursement of fees and costs incurred to analyze conflicts of interest for prospective counsel in the underlying litigation.  Such a per se rule is inconsistent with the *Aerojet* test.  The Evanston Defendants have provided no case law to show otherwise.

### ii.  Whether these costs can be allocated *solely* to claims that is not even potentially covered

Because the Evanston Defendants have not shown that the disputed fees and costs were for a claim that is not even potentially covered, the Court does not reach next issue of whether the disputed amounts are allocated *solely* to claims that are not even potentially covered.

### iii.  Conclusion

In sum, the Court concludes that the Evanston Defendants have not shown that the $13,336.23 in fees and costs were for a claim that was not even potentially covered.  Thus, the Court DENIES the Evanston Defendants' Certain Costs Motion seeking a declaration that they are entitled to a reimbursement for $13,336.23 in fees and costs that the MGA Plaintiffs incurred to analyze conflicts of interest for prospective counsel.

### f.  The Evanston Defendants Are Not Entitled to A Reduction In Costs Due to Alleged Misdeeds by the MGA Plaintiffs Against Third Parties

The Evanston Defendants devote several pages to describing how the MGA Plaintiffs have allegedly denied payment and done other misdeeds *to their counsel or other insurers* during the underlying litigation.  However, the Evanston Defendants make no legally-cognizable arguments based on these facts, and the Court is at a loss as to how the Evanston Defendants would have standing to raise defenses arising from the alleged harms to these third parties. Furthermore, if the Evanston Defendants had truly desired that these third parties receive payment, the Evanston Defendants could have provided a defense and thus "prevented . . . the extensive litigation in which [the insured] engaged."  *See Arenson*, 48 Cal. 2d at 538-39.  Thus, the Court is left with the impression that the Evanston Defendants, fearing a multi-million dollar judgment for denying a defense, are now simply striving to make MGA Plaintiffs appear less deserving of relief.

The Court resists the Evanston Defendants' urging to make bad law from bad facts.  The law is clear that an insurer owes a duty to defend where there is potential for coverage, and this law applies whether the insured is a paragon of virtue or not.  If the Evanston Defendants

wanted to insure only angels, perhaps they could have contracted to do so with a good-behavior clause. But since they chose to insure mere mortals, they must abide by our laws.[17]

## VII.   The Evanston Defendants Are Not Entitled to an Offset

In addition to their Certain Costs Motion (Dkt. 357) seeking reimbursement, the Evanston Defendants filed a separate Offset Motion (Dkt. 364) seeking a declaration that their liability shall be reduced by the amount that the MGA Plaintiffs ultimately recover from Mattel in the underlying action, a reduction that the Evanston Defendants describe as an "offset." Specifically, the Evanston Defendants seek to reduce their liability by the approximately $140 million that this Court awarded in the underlying suit to the MGA Plaintiffs for attorney's fees and costs incurred in defending against Mattel's copyright claims and prosecuting MGA's trade secret counterclaim-in-reply. *See* Reply (Dkt. 453) at 3:1-3. This award is currently being appealed by Mattel. The Evanston Defendants argue that an offset is necessary to prevent the MGA Plaintiffs from eventually receiving a "double recovery," that is, a recovery from the Evanston Defendants of the *same* attorney's fees and costs that the MGA Plaintiffs may ultimately receive from Mattel.

The Court concludes that the Evanston Defendants seek exactly the thing they wish to deny the MGA Plaintiffs: a double recovery. The relief sought by the Offset Motion and the Certain Costs Motion is for the *same* fees and costs MGA incurred for defending against Mattel's copyright infringement claim and prosecuting MGA's trade secret counterclaim-in-reply. In the Certain Costs Motion, this relief takes the form of reducing the Evanston Defendants' liability to the MGA Plaintiffs; in the Offset Motion, the relief takes the form of a declaration that the Evanston Defendants shall receive the amounts paid by Mattel. While the

---

[17] Specifically, the laws of California, because a federal court with diversity jurisdiction applies the substantive law of the state in which it is located. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (applying California law to interpret insurance policy); Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 1-B § 1:191 ("Federal courts in diversity cases apply state rules governing interpretation of contracts").

Evanston Defendants' separate filing of their two Motions concealed the double recovery they could receive if both Motions were granted, the parties' supplemental briefing confirms this Court's suspicion that the Evanston Defendants seek a double recovery.[18]

The Court DENIES the Offset Motion.  First, to the extent that the Evanston Defendants seek an offset under a theory of equitable subrogation, their motion fails because they do not even *mention* the governing law, much less demonstrate that the present facts merit such relief. Second, to the extent that the Evanston Defendants seek an offset under the theory that this Court's award of fees and costs reduces MGA's damages for breach of contract, the Evanston Defendants have not shown that the attorney's fees and costs which comprise the "offset" are part of the MGA Plaintiffs' damages arising from the Evanston Defendants' breach.

### a.  The Evanston Defendants Have Not Shown that They Are Entitled to Equitable Subrogation

The Evanston Defendants explain that offset "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A."  *See* Mem. (Sealed Dkt. 365) at 5 (quoting *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398 (9th Cir. 1996)).  Yet, the Evanston Defendants never explain *why* the fees and costs that the MGA Plaintiffs won after the Evanston Defendants denied a

---

[18] In the supplemental briefing requested by this Court, the parties appear to agree with the following summary of how the resolution of the Certain Costs Motion impacts the Offset Motion.  If this Court *granted* the *Certain Costs Motion*, then: (1) the Evanston Defendants would be entitled, under a theory of restitution, to reimbursement of the MGA Plaintiffs' costs of defending against Mattel's copyright claims and prosecuting MGA's affirmative counterclaims; and (2) the Offset Motion would be denied as moot, because the reimbursement by the MGA Plaintiffs would make Evanston Defendants whole.  *See* Supplemental Mem. In Support of Defendant Evanston's Motion for Partial Summary Judgment No. 3 For Offset (Sealed Dkt. 470) at 5:27-28-6:1-3; MGA Supplemental Brief in Opposition to Evanston's Motion for Partial Summary Judgment No. 3 For Offset (Dkt. 467) at 5:22-28-6:1-13.

defense constitute a "debt" that the MGA Plaintiffs owe to the Evanston Defendants.  Instead, the Evanston Defendants cite a few cases to argue that "California courts have applied the offset rule when an insured seeks to recover amounts owed by its insurer . . . that the insured is recovering . . . from another source."  *See id.*  5-6 (citing *Patent Scaffolding Co. v. William Simpson Constr. Co.*, 256 Cal. App. 2d 506 (1967); *Plut v. Fireman's Fund Ins. Co*., 85 Cal. App. 4th 98, 104 (2000)).

Contrary to the Evanston Defendants' characterization of the offset rule, California courts do not simply grant an offset anytime an insured is fortunate enough to mitigate the harm of its insurer's breach by obtaining payment from another source.  Instead, the cases cited by the Evanston Defendants require an insurer to demonstrate that it is entitled to "subrogation," that is the "right to be put in the position of the insured, in order to recover from third parties who are legally responsible to the insured for a loss paid by the insurer."  *Plut v. Fireman's Fund Ins. Co*., 85 Cal. App. 4th 98, 104 (2000).  To be entitled to "equitable subrogation"—that is, the right to subrogation even without an express agreement between the insured and the insurer— the insurer must satisfy a 6-element test, which includes a showing that "justice requires that the loss should be entirely shifted from the insurer to the [third party], whose equitable position is inferior to the insurer."  *See Patent Scaffolding Co. v. William Simpson Constr. Co.*, 256 Cal. App. 2d 506, 509 (1967).

The Evanston Defendants do not even mention this 6-element test, much less explain why a third party—Mattel—is in an inferior equitable position to Evanston Defendant, who saved millions by refusing to defend their insured until ordered to do so by this Court 20 months later. Nor do the Evanston Defendants explain why this Court should grant an offset when one of the cases cited by the Evanston Defendants reached the opposite conclusion, reversing the judgment for the insurers because subrogation would allow the insurers to "receive a windfall" after they had already "accepted premiums to cover the very loss which occurred."  *See id.* at 516.

In short, the Evanston Defendants are not entitled to an offset under a theory of equitable subrogation because they have provided neither the law nor analysis to demonstrate that the present facts merit such relief.

**b.  The Evanston Defendants Have Not Shown that the Fees and Costs which Comprise the "Offset" Are Part of the MGA Plaintiffs' Damages Arising From the Evanston Defendants' Breach**

Where an insurer's denial of its insured's defense is a breach of contract, "the proper measure of damages is the reasonable attorney's fees and costs incurred by the insured in defense of the claim."  *Marie Y. v. General Star Indemnity Co.*, 2 Cal. Rptr. 3d 135, 159 (2003).

The Evanston Defendants argue that, if they are found liable for breach of contract, they are nonetheless entitled to an "offset" because the MGA Plaintiff's contractual damages have been reduced by this Court's award to MGA of approximately $140 million for fees and costs. The Evanston Defendants start from the general rule that damages for breach of contract are limited to the injured party's *actual* loss as a result of the breach—in this case, the fees and costs that MGA incurred while defending itself after the Evanston Defendants denied a defense.  The Evanston Defendants then argue that MGA's *actual* loss is smaller than the total attorney's fees and costs that MGA incurred, because this Court awarded MGA the attorney's fees and costs it incurred in defending against Mattel's copyright claims and prosecuting MGA's trade secret counterclaim-in-reply.

The Evanston Defendants' argument fails because they have not shown—indeed, they make no attempt to show—that the attorney's fees and costs which comprise the "offset" are part of the MGA Plaintiffs' damages arising from the Evanston Defendants' breach.  First, this Court can not determine the Evanston Defendants' right to offset at this point because their right to the alternative relief of reimbursement is uncertain.  Second, this Court can not grant the Evanston Defendants' motion because it seeks an offset that may be disproportionate to their liability; the Evanston Defendants seek an offset of 100% of the amount the MGA Plaintiffs may recover from Mattel, but the Evanston Defendants are one of several insurers who may be liable to the MGA Plaintiffs and thus may share *less* than 100% of the liability.  Finally, none of the cases cited by the Evanston Defendants support issuing a declaration of a right to an offset at this time, *before* the MGA Plaintiffs' contractual damages have been determined.

### i. The Evanston Defendants have not shown that the fees and costs which comprise the "offset" are fees and costs for which they would *not* be entitled to reimbursement

As noted previously, if the Evanston Defendants are entitled to reimbursement for certain costs, they are not entitled to also offset their liability by those costs because this would result in a double recovery. In this Order, this Court denies the Evanston Defendants' summary judgment motion regarding reimbursement for the fees and costs MGA Plaintiffs incurred in defending Mattel's copyright infringement claim and prosecuting a trade secret counterclaim-in-reply. However, the Evanston Defendants may be able to prove their right to reimbursement for these costs at trial. Because the Evanston Defendants' right to reimbursement is uncertain, this Court has not yet determined the amount and source of the MGA Plaintiffs' damages. Because this Court has not yet determined the MGA Plaintiffs' damages, it can not determine whether those damages should be offset by the award against Mattel.

In the underlying suit, the MGA Plaintiffs defended against *several* claims brought by Mattel, but the Court awarded attorney's fees and costs for only *some* of these claims.[19]  The parties agree that the MGA Plaintiffs were invoiced for $175 million in attorney's fees and costs in the underlying litigation. *See* Pls. Statement of Genuine Issues (Sealed Dkt. 417) at 6. The parties also agree that, on August 4, 2011, the Court awarded attorney's fees and costs *only* for: (1) MGA's defense of Mattel's copyright claim, which totaled $137,355,177; and (2) MGA's prosecution of its counterclaim-in-reply under the California Uniform Trade Secret Act, which

---

[19] Mattel's Second Amended Answer and Counterclaims ("SAAC"), filed on July 12, 2007, alleged several claims against MGA. *See* Court's Final Pre-Trial Conference Order (04-9049 Dkt. 3917 at 11) (summarizing Mattel's seven claims). Mattel's Fourth Amended Answer and Counterclaims (FAAC), filed on April 12, 2010, amended its previous pleadings to add new parties and claims. *See* FAAC (04-9049 Dkt. 7714).

totaled $2,522,000.  *See* Pls. Statement of Genuine Issues (Sealed Dkt. 417) at 4.[20]  By subtracting these two awards from the total $175 million invoice, the Court concludes that the MGA Plaintiffs seek approximately $35,122,823 in other defense costs, that is, in costs incurred defending against claims that are not part of this Court's award against Mattel.

The following summarizes the division of attorney's fees and costs incurred by MGA as described by this Court's August 4, 2011, Orders:



The next three paragraphs and charts assume without deciding that the Evanston Defendants have a right to offset, and then shows how that right changes depending upon whether the Evanston Defendants can show at trial that they have a right to reimbursement.  For the sake of simplicity, this discussion also assumes that the Evanston Defendants are the *only* insurer liable for the $175 million invoiced to the MGA Plaintiffs.

**Scenario 1: All Costs Are Potentially Covered – Requires No Reimbursement, But an Offset for Some Costs**.  Suppose that *all* the copyright defense costs, other defense costs, and trade secret counterclaims-in-reply costs are potentially covered by the 2001-02 Policy.  Because *all* of MGA's attorney's fees and cost are potentially covered by the policy, the

---

[20] *See also* Order (04-9049 Dkt. 10703) at 15:27, 16:4-5 (awarding $105,688,073 in attorney's fees and $31,677,104 in costs to MGA for MGA's defense of Mattel's copyright claim); Order (04-9049 Dkt. 10702) at 1:23-24; 11:12-14 (awarding $2,172,000 in attorney's fees and $350,000 in costs to MGA for MGA's prosecution of its trade secret misappropriation counterclaim-in-reply under the California Uniform Trade Secret Act).

Evanston Defendants would *not* be entitled to reimbursement for any amounts they paid to the MGA Plaintiffs. *See Buss*, 16 Cal. 4th at 53. However, assuming the Evanston Defendants are entitled to an offset, the offset would be: (1) $137,355,177 incurred in defending against Mattel's copyright claim; and (2) the $2,422,000 incurred in prosecuting MGA's trade secret counterclaim-in-reply.



**Scenario 2: Some Costs Are Potentially Covered – Requires Reimbursement of Some Costs and Offset of Other Costs**. Suppose that $87,355,177 of the copyright defense costs, $25,122,823 of the other defense costs, and all of the trade secret counterclaims-in-reply are allocated solely to costs that are not even potentially covered. Assuming the Evanston Defendants have a right to an offset, the Evanston Defendants are entitled to: (1) reimbursement for $87,355,177 of the costs incurred in defending against Mattel's copyright claims; (2) an offset of the remaining $50,000 in copyright defense costs that are potentially covered, but which the MGA Plaintiffs will recover from Mattel; (3) reimbursement of the $25,122,823 in other defense costs; and (4) reimbursement of all the trade secret counterclaim-in-reply costs. Because the Evanston Defendants are entitled to reimbursement of the trade secret counterclaim-in-reply costs, they are not also entitled to an offset of these costs.



**Scenario 3: No Costs Are Potentially Covered – Requires Reimbursement of All Costs and No Offset.** Suppose that all the copyright defense costs, other defense costs, and trade secret counterclaims-in-reply are allocated solely to claims not even potentially covered. This means that the Evanston Defendants are entitled to reimbursement for *all* the costs they paid the MGA Plaintiffs. Because the Evanston Defendants are made whole through reimbursement, they are not entitled to any offset.



In sum, because the amount and type of fees and costs for which the Evanston Defendants seek reimbursement is not yet determined, the MGA Plaintiffs' damages are unknown. Because the MGA Plaintiffs' damages are unknown, this Court can not determine the Evanston Defendants' right to an offset.

### ii. The Evanston Defendants have not shown that the fees and costs which comprise the "offset" are fees and costs for which the Evanston Defendants—and not other insurers—would be liable

For the sake of simplicity, the previous section assumed that the Evanston Defendants are the *only* insurer liable for the $175 million invoiced to the MGA Plaintiffs. However, the Evanston Defendants are actually one of several insurers who may be liable to the MGA Plaintiffs. The Court has not yet determined what percentage of the $175 million invoiced to the MGA Plaintiffs should be allocated to the Evanston Defendants and what percentage should go to other insurers.[21] Because the Court has not determined the Evanston Defendants' percentage of liability, it can not determine the Evanston Defendants' right to offset.

The Evanston Defendants inexplicably argue that they are entitled to an offset of 100% of the monies that may be recovered from Mattel, even if they will not be liable for 100% of the MGA Plaintiffs' attorney's fees and costs. It is undisputed that the MGA Plaintiffs are seeking to hold the Evanston Defendants liable for approximately $94 to $96 million in attorney's fees and costs. *See* Pls. Statement of Genuine Issues (Sealed Dkt. 417) at 6 ($80 million is sought in the present action and approximately $14 to $16 million has already been paid). Thus, the MGA Plaintiffs are seeking to hold the Evanston Defendants liable for about 55% of the $175 million invoiced to the MGA Plaintiffs. Yet, the Evanston Defendants are seeking an offset for 100% of the $140 million awarded by this Court against Mattel. In short, the Evanston Defendants are seeking an offset that will eliminate their liability to the MGA Plaintiffs.

The Evanston Defendants provide no explanation for why they should receive an offset for 100% of the $140 million awarded by this Court when the MGA Plaintiffs are only seeking to hold them liable for 55% of the amount invoiced to the MGA Plaintiffs. Thus, the Evanston Defendants have failed to persuade this Court that they are entitled to an offset.

---

[21] Indeed, in a separate dispute regarding the allocation of costs between other insurers, the Evanston Defendants argue that the allocation between insurers is "unclear" and a factual issue that precludes summary judgment. *See* Opp'n (Dkt 399) at 1-2.

### c. The Evanston Defendants cite no case in which a court awarded the insurer an offset before the insured's damages were determined

Finally, the Evanston Defendants do not cite a single case in which a court held that an insurer was entitled to an offset of the amount an insured may recover against a third party where, as here, the insured's damages are not yet determined. Instead, the cases that offset the insurer's liability do so only *after* a trial in which the insured's damages have been determined. *See Plut v. Fireman's Fund Ins. Co.*, 85 Cal.App.4th 98, 104, 105-6 (2000) (upholding offset of the monies insured recovered from opponent in underlying litigation where trial court imposed the offset *after* jury determined the amount of money the insurer owed the insured for breach of contract); *Feurzeig v. Ins. Co. of the West*, 2003 WL 21003733, at *13 (Cal. Ct. App. May 5, 2003) (upholding offset of the monies insured recovered from other insurers where trial court imposed the offset *after* jury determined the amount of money the insurer owed the insured for breach of contract).[22]

### d. Conclusion

In sum, the Court DENIES the Evanston Defendants' motion for a declaration that, if they are liable for breach of contract, they are entitled to an offset of the monies that the MGA Plaintiffs may recover from Mattel. This Court denies the Evanston Defendants' motion for an

---

[22] Other cases cited by the Evanston Defendants are simply inapposite. One case actually held that the insurer was *not* entitled to an offset. *See Patent Scaffolding Co. v. William Simpson Constr. Co.*, 256 Cal.App.2d 506, 516 (1967) (reversing the judgment for the insurers because allowing recovery from third party would give insured "a windfall"). The other case did not actually involve an *insurer* seeking to recover anything. *See Bramalea California, Inc. v. Reliable Interiors, Inc.*, 119 Cal.App.4th 468, 472-73 (2004) (developer could not recover attorney fees for defense of action by homeowners where fees "were entirely paid for" by developer's insurer). Furthermore, none of the cases cited by the Evanston Defendants involved the issue here: an insurer advancing two alternative theories—reimbursement and offset—to recover the same costs from its insured.

offset at this point because: (1) their right to the alternative relief of reimbursement is not yet determined; (2) they seek an offset that may be disproportionate to their liability; and (3) none of their cases support a declaration of a right to an offset *before* the insured's contractual damages have been determined.

## IV.   Disposition

For the reasons stated above, the Court DENIES the Motion for Partial Summary Judgment No. 3 for Offset (Dkt. 364).

The Court GRANTS IN PART and DENIES IN PART the Motion for Partial Summary Judgment No. 1 Regarding Plaintiff MGA Entertainment's Claim for Certain Costs (Dkt. 357).

The Court GRANTS the Certain Costs Motion to the extent it seeks to reduce the Evanston Defendants' liability by:

(1)  $13,263,529 in fees and costs that Skadden originally billed the MGA Plaintiffs but which the MGA Plaintiffs are not obligated to pay at the present time.  However, nothing in this Order precludes the MGA Plaintiffs from seeking additional funds from the Evanston Defendants in the future if the MGA Plaintiffs become obligated to pay Skadden *more* than $11 million for the work already completed in the underlying litigation;

(2)  $6,461,860 in fees and costs incurred for defending OMNI 808;

(3)  $4,588,113 in fees and $77,486 in costs attributable to pre-tender work.

However, the Court DENIES the Certain Costs Motion to the extent they seek to reduce the Evanston Defendants' liability by:

(1)  $9,456,008 in "discounts" that the MGA Plaintiffs have not yet paid their counsel;

(2)  $3.5 million that the MGA Plaintiffs are refusing to pay Orrick.

The Court DENIES the Certain Costs Motion regarding the other costs because the Evanston Defendants, by seeking to reduce their liability to *only* those fees and costs incurred for claims that are at least potentially covered, are attempting an impermissible end-run around *Buss v. Superior Court*, 16 Cal. 4th 35, 59 n. 23 (1997).  Alternatively, the Court DENIES the Certain Costs Motion because the Evanston Defendants neither mention the controlling law,

*Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th 38 (1997), nor any cases applying this controlling law and it is the Evanston Defendants' burden to show that they are entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

In addition, the Court DENIES the Evanston Defendants' Certain Costs Motion to the extent they seek a declaration that the Evanston Defendants are entitled to a reimbursement of:

(1) $6,846,272 in fees and costs were incurred to litigate the MGA's Plaintiffs' affirmative counterclaims-in-reply in the underlying litigation;

(2) $137 million or $162 million in fees and costs that MGA Plaintiffs incurred in defending against Mattel's copyright infringement claim in the underlying action;

(3) $4,158,528 in fees and costs incurred for defending Carter Bryant;

(4) $1,301,901 in fees and costs incurred for defending Gustavo Machado;

(5) $1,693,223.74 in fees and costs incurred for representing witnesses.

(6) $38,866.19 in fees and costs billed by Lenczner Slaght;

(7) $13,336.23 in fees and costs that the MGA Plaintiffs incurred to analyze conflicts of interest for prospective counsel.

DATED:  February 24, 2012

_____

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE